Hall, Judge
 

 The bill charges, that the money received from the defendant,
 
 Jones,
 
 was a loan and not the price of the land, and that the land was to be mortgaged as a security for the debt; that when complainant was about to execute the deed he expressed a wish that a clause of redemption should be inserted in it, but that the defendant objected, and said, “here, take the money you want and trust to my word;” and that the defendant refuses to either receive the money, or reconvey the land.
 

 From this statement, the justice of the case seems to be with the complainant, and relief ought to be granted, unless there is some rule of law, founded in policy, that forbids it.
 

 
 *432
 
 It is objected, that the contract of the parties is evidenced by the deed executed by the complainant to the defendant Jones, and that parol evidence ought not to he received to contradict it; and that that principle was established in the decision of this Court which took place on the same point in July, 1810, (1
 
 Mur.
 
 449.) With respect to that decision, I think my recollection serves me when I say, that the decision of a majority of the Court was not as is laid down in that case. I know that the Court did strongly incline against the introduction of parol evidence to prove directly that the deed executed to
 
 Jones
 
 was a mortgage, but did not doubt but that circumstances might he given in evidence from which a jury might infer that the deed was considered by the parties as a mortgage, and find a verdict accordingly: such as the value of the land at the time of the contract, the sum of money paid for it, the rent paid or agreed to be paid by complainant during the time he afterwards lived upon it. And I am supported in this from this further fact: that shortly after that decision was made, an issue was made upon this very point in the Superior Court of Wake county, where the cause was pending, and submitted to a jury. The question submitted was, whether the deed was a mortgage or not. There was a mistrial. The question before that jury is the one now before this Court. It may further be observed, that the same counsel appeared for the parties in both Courts.
 

 With respect to the objection that parol evidence ought not to be received to contradict or control a written instrument, as a general principle or rule of law, its correctness is admitted. It is also admitted, that when the parties undertake to embody their contract in writing, and really do so (unless there is fraud, &c. in the case,) it cannot nor ought it to be disturbed by parol evidence. The question then here is, was the contract of the complainant and the defendant
 
 Jones,
 
 committed to writing? or was there any other contract made at the time than
 
 *433
 
 what the deed sets forth? I think there was; because the complainant was a needy man. The disproportion between the value of the land and the money received for it, the high rent which complainant agreed to give for it, and his remaining in possession so long as he did after the sale; before complainant signed the deed he wished a clause of redemption inserted;
 
 Jones
 
 said he had given full value for the land; complainant answered that he would not take three times that sum for it. After he signed the deed,
 
 Jones
 
 told him if he would return the money, that was the eight hundred dollars which he was about to give him, at the end of the year, together with two hundred dollars rent, that he might have the land again. This surely does not appear like a serious and
 
 bona Jide
 
 purchase of the land by
 
 Jones.
 
 Had this money been paid at the end of the year, by complainant, it would have been paying
 
 Jones
 
 his principal and twenty-five per cent, interest, which the hill states the contract to have been. At this rate the purchase money would have been swallowed up in the rent due in four years. And it must appear a little singular that two hundred dollars rent should he paid for land that was only worth eight hundred. As to the value of the land, the testimony is contradictory. It appears from some of it, that the land wms worth in 1799 seventy five cents per acre; that in the year 1804 it was worth one dollar, without the improvements put on it by
 
 Lane
 
 who purchased from
 
 Jones.
 
 From this testimony the land was worth twenty-five cents per acre more in 1804 than it was in 1799, notwithstanding timbers, had been taken from it by
 
 Streator
 
 while he lived on it, and by
 
 Lane
 
 who lived on it afterwards up to that time. It appears from other testimony, that the land in 1799 was worth g 2 50 per acre; and from other testimony g 3 per acre; a mean valuation between the two extremes would be nearer thrice, than twice, the sum for which
 
 Jones
 
 says he purchased it. But it is asked, why did complainant execute the deed under these circumstances?
 
 *434
 
 And it is argued, that as he has done it he must be bound by it. My answer is, that he was a neédy man.
 
 Jones
 
 was the lender, and he was the borrower; as Lord
 
 Mans-
 
 observes, he was the slave of the lender.
 
 (Doug.
 
 672.
 
 note.)
 
 Borrowers are oppressed men, and their necessities oblige them to submit to any terms.
 
 (Ca. Temp. Talbot
 
 41.) Under such circumstances it will not do to take shelter under the maxim
 
 volenti non Jit injuria,
 
 they are not in
 
 pari delicto.
 
 (1
 
 Ves.
 
 319.)
 

 In the case of
 
 Barnett
 
 v.
 
 Sabine,
 
 (1
 
 Vernon
 
 268.) which happened before the statute of frauds, &c. in England, the single question was, mortgage or no mortgage; and the Court received evidence of the value of the land; that the purchase money was 9501., that the defendant was offered about the same time 1400Í.; and to prove that such evidence was sufficient to make it a mortgage, they cited two cases,
 
 Cole
 
 v.
 
 Martin,
 
 and
 
 Beale
 
 v.
 
 Collins;
 
 neither of which cases I have been able to find. The chancellor dismissed the bill, not because he would not hear parol evidence, but because the evidence when heard did not convince him that the deed was originally a mortgage. In another case, since the statute of frauds,
 
 (Ca. Temp. Talbot, Cottrel
 
 v.
 
 Purchase,)
 
 the same question arose whether a deed absolute on the face of it was intended by the parties to be a mortgage? And in that case evidence was given as to the purchase money, and as to the value of the land, which was deemed by the chancellor not sufficient proof that the deed had been originally considered by the parties as a mortgage; but he added, “had the complainant continued in possession any time after the execution of the deed, I should, have been clear that it was a mortgage; but she was not, and her long acquiescence under the defendant’s possession is to me strong evidence that the deed was an absolute conveyance.” These cases are introduced, not for the purpose of showing the final decrees of the chancellors, but to show that they permitted parol evidence to be given to prove that
 
 *435
 
 deeds absolute on the face of them were by the original contract considered by the parties to be mortgages. In the last mentioned case of
 
 Cottrell
 
 v. Purchase, the chancellor concluded by saying, that they who took an absolute conveyance of an estate as a mortgage, are guilty of a fraud; for which he cited
 
 Bacon’s Tracts
 
 37. In
 
 Free, in Chancery,
 
 526, it is stated, that when the lender having an absolute conveyance refused to execute a defeasance, Lord
 
 Nottingham
 
 decreed it against him on the fraud,
 
 after
 
 the statute of frauds.
 

 In that case the decree was made on the ground that he refused to enter into a written agreement to reconvey as the statute required, after having agreed to do so. In this case relief is prayed because the defendant refuses to reconvey after having by parol contract agreed to do so, the statute of frauds not having been in force at the time of the contract. Another case in the same book 526, was where an absolute conveyance was made for a sum of money, and the person to whom it was made, instead of entering and receiving the profits, demanded interest for his money, and had it paid him; this was admitted as evidence to explain the nature of the conveyance. This decree was made on the same kind of evidence as that objected to in this case. The only doubt entertained by the judges in this and other cases of the like kind, seemed to be, whether the statute of frauds stood in the way or not.
 
 For Powell,
 
 in his treatise on mortgages, 200, where the last mentioned case is also noticed, makes this remark:
 
 “
 
 In such cases the proof offered is not considered a variation of the agreement, but explanatory only of what it was meant to have been; apd the allowing any other construction upon the statute of frauds and perjuries, would be to make it a guard and protection to fraud, instead of a security against it which was the intention of it.” I have before stated, that when this contract was made there was no statute of frauds and perjuries in foree in in this state.
 

 
 *436
 
 In consequence of this statute, the English judges have rejected parol evidence offered to control written contracts (unless they have been procured through fraud, because a parol contract is void under the statute; and it cannot be established in part by written, and in part by parol evidence, more than if it all reefed on parol evidence. As in
 
 Woolain
 
 v.
 
 Hearne, (7 Ves.
 
 217.) a bill was brought for a specific execution of an agreement for a lease at a less rent than was mentioned in the written agreement, and the variation was sought to be proved by parol evidence. The master of the rolls said, «that the statute had been too much' broken upon by supposed equitable exceptions, and that he would go no further in giving effect to parol evidence than he was forced to do by precedents. He dismissed the bill, but said that the evidence made out the complainant’s case. As coming nearer to this, however, notwithstanding the statute of frauds, I must notice the case of
 
 Pember
 
 v.
 
 Matthews,
 
 which came before Lord Thurlow. A bill was brought by the original lessees of a leasehold estate against the assignees of the lease, for a specific performance of a pa-rol undertaking to indemnify the complainants against all rents and covenants to be paid or kept on the lessee’s part towards the original lessor, and to execute a bond for securing such indemnity; the assignment had been by sale at auction, and the conditions of sale did not state the indemnity. It was objected that parol testimony was inadmissible, on the ground that when the parties have entered into a written agreement no parol evidence can be admitted to increase or diminish such agreement. Lord
 
 Thurlow
 
 said, «the rule of law is right, but when, the objection was
 
 originally
 
 made and
 
 promised
 
 by the other party to be rectified, it came among the string of cases (1
 
 Eq. Ca.
 
 Ab. 230, 1.) where it is considered a fraud upon the rule of law;” and ordered it to go to law upon an issue whether there was such a promise on the day of the execution of the assignment of the lease; and
 
 *437
 
 upon the trial the jury found there was such a promise, and complainant had a decree for a specific performance. If this case was decided on the ground of fraud, I think the case before us is not altogether clear of it.
 

 I cannot think that the case of
 
 Lord Irnham
 
 v.
 
 Child and others,
 
 (1
 
 Brown
 
 92.) is an authority for the defendants. In that case it was agreed that the annuity should be redeemable; but the parties thought that if there was a clause of redemption inserted it would make it usurious, and for that reason it was agreed that such a clause should not be inserted. Lord
 
 Thurlow
 
 said, there was no fraud in that case, and refused to relieve the parties upon parol evidence; but said, that if it had been intended to be inserted, and had been suppressed by. fraud, he would not refuse to hear the evidence.
 

 It is observable in this case, that the parties intended to evade the statute of usury. They were both in
 
 pari delicto.
 
 The same remark may be made as to the cases in
 
 Brown
 
 168. 1
 
 Ves.
 
 241. Cases are not wanting on this subject in the United States. In
 
 Ross
 
 v.
 
 Merrell,
 
 (1
 
 Wash.
 
 14.) the bill was brought to redeem negroes conveyed to the defendant by an absolute bill of sale; parol evidence was received to prove that it had been executed as a mortgage. The court said they had the less difficulty in receiving it, as the complainant had remained two years in possession of the negroes after the conveyance. And in
 
 Robertson
 
 v.
 
 Campbell and Wheeler,
 
 (2
 
 Call
 
 421.) the complainant had conveyed by absolute bill of sale certain slaves to the defendant; parol evidence was received to prove that it was the intention of the parties that the slaves should be redeemable, and the Court believing the evidence decreed for the complainant. See also
 
 Sadler’s executor and legatees
 
 v.
 
 Greene, (Mont
 
 101.) and
 
 King
 
 v.
 
 Newman,
 
 ( 40.) decided upon the same principle, notwithstanding, as I understand, the statute of frauds, See. is in force in that commonwealth.
 

 In 1
 
 Johnson’s Chancer if Reports, J.
 
 &
 
 H. Boyd
 
 v.
 
 *438
 

 M‘Lean and wife,
 
 the plaintiff purchased of
 
 Colden
 
 a tract of land, and borrowed of the defendant the money to pay for it, and directed
 
 Golden
 
 to convey the land to defendant as a security for the money, which was done by an absolute deed; the money was tendered, and a bill filed praying a conveyance of the land; the defendant relied upon the statute of frauds. Chancellor
 
 Kent
 
 decided, that it was a resulting trust, excepted out of the statute of frauds, and that the fact whether the purchase was made with the plaintiff’s money might be proved by parol evidence.
 

 In this case the complainant did not procure a third person to convey the lands as a security to the defendant, but he conveyed them himself as a security for the debt. In both cases the lands were held as a security for the debts, but by deeds absolute on the face of them. If resulting trusts are excepted out of the statute, other trusts may be proved by parol evidence when unshackled by any statute. See also 1
 
 Johnson Chan. Rep.
 
 273. 2
 
 Ibid
 
 274.405.585.630. In 1
 
 Day’s Cases
 
 139. parol evidence' ’.vas held admissible in equity to show that an absolute-deed was intended as a mortgage. (2
 
 Day
 
 137.) See also mote to
 
 Co. Lit.
 
 205
 
 a. note
 
 96.
 

 I have said'that the evidence in this case convinces me that the deed in question should be considered as amort-gage, because I think it was understood by the parties that the land was redeemable; and I have come to this conclusion from the evidence given in the case. Although the evidence proving directly the declaration of Jones is not much to be relied upon, yet it is corroborative of other evidence, as to the value of the land, the possession kept afterwards by
 
 Streator,
 
 and the rent charged, &c. as well as the needy situation of
 
 Streator.
 
 And I am also of opinion, from the authorities examined in this case, that it is proper the evidence should be received in reference to the deed from
 
 Streator to
 
 Jones. I will take another short view of the case, in regard to the objection
 
 *439
 
 that the evidence contradicts the deed. Let it then be ad-milted that
 
 Jones
 
 loaned, or agreed to loan, eight hundred dollars at twenty-five per cent, interest, or any other per cent.; that it was farther agreed, that
 
 Streator
 
 should convey to
 
 Jones
 
 bis land
 
 in fee simple
 
 as a security for the debt; and it was farther agreed, that when
 
 Streator
 
 should replace the money with interest (provided he did it in twelve months,)
 
 Jones
 
 should reconvey the land to
 
 Streator,
 
 and that such contract rests altogether on parol evidence, and that the statute of frauds, &c. was not in force, and that parol contracts are obligatory upon the parties; and let us suppose that in part-execution of the contract, the land is conveyed to
 
 Jones,
 
 and the money advanced to
 
 Streator;
 
 can it be said that the deed embraces the whole contract? or can it be said that the deed contradicts that part of the contract which provided for redemption ? It has never been considered that a defeasance and an absolute conveyance will not stand together. It seems to me that in such cafe the execution of the deed is a part execution only of the contract, and that the residue of the contract remains exe-cutory. And this I say without impugning what I have before admitted, namely, that a written contract shall be obligatory, when it appears that it was the intention of the parties to commit the wdiole contract to writing, and and there is no allegation of fraud, &c.
 

 Henderson, Judge.
 

 It is unquestionable that written evidence is more certain than mere oral testimony, or, as it is commonly called, parol evidence. Hence follows the rule which seems to be very generally admitted, that what is written shall not be contradicted, controlcd, enlarged, or explained, by mere parol, unless it is
 
 shown
 
 that it is
 
 so
 
 written through fraud or by accident; which latter term embraces mistake, surprize, or the like. There equity relieves upon a principle of equitable jurisdiction, not tipon the waiting but on a thing, t® wit, the
 
 *440
 
 fraud or accident dehors the writing, as Lord
 
 Tlmrlow
 
 exPresscs it in the case of
 
 Irnham
 
 v.
 
 Child;
 
 for equity relieves in cases of fraud, accidents, and trusts. But the fraud here meant, is not the fraud in not
 
 observing
 
 the contract, but that fraud by which the writing is made to speak a language
 
 different
 
 from the agreement; otherwise it would afford a ground of relief in all cases, and to obtain relief in such cases, such a case must be made in the bill, and of course supported by the proofs. But the great difficulty is to ascertain what is here meant by the written
 
 agreement.
 
 Is it confined to those writings professing as it were to evidence the' written agreement, or does it embrace writings made for other purposes
 
 diverso intuitu?
 
 ex. gratia to execute them, and if the latter, to such of them as contain direct expressions of the agreement; or where the parol agreement is so inconsistent with the ■written agreement that both cannot stand together, or where such contradiction is not absolutely repugnant to or inconsistent with the writing, but the contradiction only a probable inference. The authorities are somewhat contradictory on the subject, and I have not the vanity to believe that I can reconcile or explain them by any examination that I could make of them. Nor do I deem it necessary in this case. But where the writing is of this latter description, and the parol evidence is not absolutely contradictory and repugnant to the writing, but the contradiction only a probable inference from the writing, I think that
 
 facts
 
 and
 
 circumstances
 
 may be shown by parol. Whatever may be the law as to mere parol declarations, is too well established, I think, by all the authorities both ancient and modern, to be now questioned. They are collected by Mr.
 
 Butter
 
 in his note in
 
 Co. Lit. page
 
 205
 
 a. note
 
 96. They prove the correctness of his observation, that wherever a conveyance or an assignment of an estate is originally intended as a security for money, whether this intention appears
 
 from,
 
 the deed itself or any other instrument, it is always considered as a mort
 
 *441
 
 gage; though there is an express agreement of the parties that it shall not he redeemable, or that the right of redemption shall be confined to a particular time, or to a particular description of persons. lie then observes, (which is to the point in this case,) that “in many of these cases, the courts have found it necessary not only to apply their general principles, but to determine the fact whether the conveyance was intended as an absolute sale or only as a security for money. If the money paid by the grantee was not a fair price for the absolute purchase of the estate conveyed to him; if he was not let in to the immediate possession of the estate; if instead of re- . ceiving the rents for his own benefit, he accounted for them with the grantor, and only retained the amount of the interest; if the expense of preparing the conveyance was borne by the grantor; each of these circumstances has been considered by the Courts as tending to prove, that the conveyance was intended to be merely pignori-titious.” The cases from which he draws his observations are there cited, and they fully support him; and this seems to me to be conformable to principle. That it was not to be redeemable, is matter of inference, not only expressed so in the deed, but inferred from it, on the presumption that if there had been such an agreement, the deed would not have been absolute. B.ut this is not entirely inconsistent with the deed, but only a very strong probability, which it would be impossible to overturn by proof of inconsistent parol declarations; for they are liable to be misunderstood, forgotten, or misrepresented by fraud or perjury, or set up, ■ where there was nothing of the kind, and are incapable of disproof. But facts from which the inferences are to be drawn are not more liable to these objections, than almost all human things. There are some acts, which, if done with deliberation, such as the one mentioned by Lord
 
 Talbot
 
 in the case of.
 
 Cottrell
 
 and
 
 Purchase, (Cas. Temp. Talbot
 
 63.) as settling an account wherein the money advanced is charged as a debt)
 
 *442
 
 and interest stated. Now it is possible that an absolute conveyance may be intended only as a mortgage or security for money; but it is impossible that there can be an absolute purchase, and yet the purchaser retain the px’ice. They both cannot stand together; the possibility yields to the impossibility; the absolute conveyance to the mortgage; for an absolute
 
 conveyance,
 
 and, intended as a mortgage, it may be; but an absolute
 
 purchase
 
 axxd mox-t-gage, it cannot be. I wish it to be distinctly understood, that I express no opinion on principles which I have not Used to decide this case; for as to them, I have not pushed the inquiry far enough to fox-m an .opinion on which I can coxxfidently rely. But this much I will observe, that in' the old cases there was too much laxity permitted in the introduction of parol evidence to interfex’e with written contracts. Writing then was not so common as at px’c-sent; and their very inhex-itances were conveyed by mere words accompanied by livery of seisin; all which might be, and was vex’y often, done without any writing at all. On the contrary, of late, since the statute of frauds, there has been too much strictness in excluding it, as we arc apt to run into contrary extremes; and the legal notions of the lawyers of England have been insensibly affected by the operation of that statute, which places parol evidence in the back ground; and in many instances it has been said that independant of the statute parol evidence would be in the back ground, when in truth the notion of its inferioxity was insensibly produced by the statute in the manner before mentioned; and it being
 
 of no
 
 moment Ixow it was produced provided it was so, the matter passed off without farther examination. And even in this state, whex’e we had no statute of frauds until very lately, the same effect has been, in a minor degree, produced, for we. get our legal notions, or most of them, from English authorities, axxd principally from those written since the passage of the statute of frauds, and particularly as to the Epics of evidence-. This case was before the late Supreme
 
 *443
 
 Court in 1810, (1
 
 Mnrphey
 
 449.) I was a member of the Court, and concurred with a majority, that mere parol declarations should not be received to contradict the deed. I did not doubt then, nor do I now, that facts might be shown by parol, from which it might be inferred that it was intended only as a security for money. In this opinion judge
 
 Locke
 
 concurred. I have no distinct recollection of judge
 
 Lowrie’s
 
 opinion. The Court was composed'^!' judges
 
 Taylor,
 
 (the present chief justice,)
 
 Hall, Locke, Lowrie,
 
 and myself. Judge
 
 Wright,
 
 I think, was absent. From my view of the case, I do not deem it necessary to examine the ground taken by the gentlemen who closed the argument, to wit, that although the parol declarations were not admissible to prove the transaction to be a mortgage, yet they were to prove it usurious. This was incomprehensible to me. I cannot, therefore, acquiesce in it, although I do not know that I can detect the fallacy of his very ingenious argument. But I liavs too much experience of the extent of the powers of my ©wn mind, not to have perceived, that the arguments, the fallacy of which I cannot detect, do not always lead to the truth; and when, to my understanding, they tend to establish something contrary to what I have arrived at by a plain and simple argument, I conclude there is error ia the argument, although I cannot point out where it lies. This transaction cannot be made a loan, without making the conveyance a mortgage, for if it was an absolute purchase, the lands passed to
 
 Jones,
 
 and the money to
 
 Strea
 
 tor; there was no debt to forbear. The evidence must, therefore, be admitted to prove the mortgage; and if the evidence is admissible to prove it a mortgage to entitle the party to redeem, it appears to me to be admissible to prove the same fact for any other purpose. If mortgage deeds were void, evidence to show it a mortgage would be admissible; but mortgage deeds are not void; only usurious mortgage deeds are void. Then as to the evidence; Iñ which I do not take the parol declarations into-consi
 
 *444
 
 deration, further than
 
 Jones
 
 admits them in Ms answer. The question then is, do the facts proven, taken in con-neclion with
 
 Jones’s
 
 two answers, show the conveyance-jje xnt:cnd0(l as a security for money? I think they do. 1st. As to the value, the witnesses difler from seventy-live cents to two dollars and fifty cents, and three dollars. I am' disposed to believe that the higher valuations are nearer right, first from the amount of the rent, as admitted by
 
 Jones;
 
 the estimate made of the injury done by
 
 Streator
 
 in two years, to wit, g 400; and the estimate made of the injury done by
 
 Streator
 
 and
 
 Lane,
 
 g 1000; the amount for which
 
 Jones
 
 sold the land two years after-wards, to wit, g 1200; and the two years rent, to wit, g 400, making in all g 1600. Now it is impossible well to perceive how this estimate made by the witnesses
 
 Hunter
 
 and
 
 Sugg,
 
 could be correct, to wit, g 975, (and yet the land in so short a time, without any convulsions in nature, or any other particular cause, received an injury of g 1000, particularly when the g 975, estimate, is supported only by two men, one of whom says that the land without the wood is worth nothing, and the other only twenty-five cents. With this estimate as to value, taken in connection with the rent, I am of opinion that the land was worth g 2600, or more. This disparity, together with amount of rent, and
 
 Streator’s
 
 retaining possession, with
 
 Jones’s
 
 answer to this bill, and another answer of his read on the hearing in another suit between
 
 Streator
 
 and himself, satisfy me, that
 
 Streator
 
 never would have signed the deed, unless it was understood, and formed part of the contract, that upon the repayment of the money he was to have the land again. Such total disregard of value, and the sacrifice consequent thereon, are contrary to the principles which almost invariably govern human actions, which, with the high rent, and
 
 Streator’s
 
 retaining possession, countervail any inference which can be drawn from the absolute form of the deed. And in truth, I think that such inference is supported by
 
 *445
 

 Jones’s
 
 answer. He admits in it that an after promise was made, (but when he cautiously conceals,) that he would re-sell, as he calls it. These re-sales, particularly when made immediately alter the execution of the title deeds, should be strictly scrutinized. They are most frequently mere shifts or devices to cloak the real nature of the transaction and evade the statute against usury. They form, at least, one link in the chain. But the object of the bargain was, not to acquire the property, but to make a profit of money; not that a person may not use his money to his profit and its increase, by buying and selling, but it must be a real sale and transfer of right, which, from their very nature, is not to be presumed. For why should a person really and
 
 Iona fide
 
 purchase the property, and in a moment after, without any cause, and before that foible of our nature, proneness to change, could exert its influence, part with it again? It is said, the motive was to make money. It is admitted, and was so understood before the contract was closed, and formed part of it; and it is true, there may be upon principle, a sale made under such circumstances; but I have never known one, and they are so rare that I have never known a person who had. "VYe have a full drawn likeness of one in
 
 Jones’s
 
 second answrer, and if they be as he has drawn them, I wish never to witness one. But with all the aid of able counsel, the features of usury and oppression could scarcely be concealed; and if he means the same thing in his answer to this bill, by a re-sale, as he did in that, and it is quite fair so to presume, for I believe he was the same being in both, very little evidence, much less than that offered in this case, would be sufficient to show the transaction to be a security tor money only. As to the other defendant,
 
 Lane,
 
 my impression is, that he stands in the same situation as
 
 Jones,
 
 but it is not so strong that at present I would decree against him. In his favor, he has the express declaration of
 
 Slreaior
 
 that
 
 Jones
 
 had a right to sell, and that if he,
 
 Streator,
 
 did not pay that year, he
 
 *446
 
 gave up. Notice that
 
 Streator
 
 set up claim is sufficient, and if he undertook to judge of its validity, he did so at his peril; and I rather think, he should not protect himself by an exposition of the contract (not a false statement of facts by Streafor) which misled him, (Lane,) by a needy, necessitous man, and whose whole estate was under mortgage to the person whose vanity it flattered and whose pride it swelled. I say, that I am not satisfied that he is protected by such means. He does not appear to be a
 
 bona fide
 
 purchaser; but at present I am not prepared to say, that he stands in the place of
 
 Jones.
 
 Retain the bill also as to him, for further directions.