*284
 
 Pearson, J.
 

 The plaintiffdoesnotset oat any specific mistake or error in the award; but attempts to impeach it, on the ground of unfairness on the part of the arbitrators. There is no proof to sustain this allegation ; and, on the further ground, that the same persons, selected to act, called in one Mr. McEntire, who acted and signed the award with them. The plaintiff consented, that McEntire should be called in and should act with the four originally chosen. His signing the award with them can in no point of view vitiate it. The Court, therefore, declares its opinion to be that the award is
 
 conclusive,
 
 as to all matters connected with the trust, up to the time it was made. There will be a reference for an account as to the four slaves retained, in which the defendant, E. Bryan, will be credited with the amount found to be due him, with interest, after deducting the amount found to be due by the defendant, L. Bryan, and charged with the price, for which the four slaves have or ought to have been sold, and such hires as may have been received, and such profits as may have been made by their labor, since the award, subject to a proper allowance for clothing, &c.
 

 In the second place, the bill charges, that, in 1810, the plaintiff conveyed two slaves, Ember and Charles, to one Puryear and Poindexter to indemnify them as his sureties to a debt of #900 ; that the bill of sale, although absolute on its face, was executed with the understanding that the plaintiff might redeem, by paying the #900 ; that, in the Fall of 1841, Puryear and Poindexter conveyed the slaves to the defendants, who paid the @900 and took the conveyance, at the request of the plaintiff, with the same understanding as to his right of redemption. Charles has been in the possession of the defendants ever since. Ember was also kept by him until 1846, when an arrangement was made, by which Alfred was substituted for Ember, and Alfred has since been in their possession. The plaintiff insists, that the defendants have recei ved large
 
 *285
 
 sums, for the hires and profits of these slaves, and that he has a right to an account and to redeem Charles and Alfred.' The defendants deny that they paid the §900 and took the conveyance,
 
 at the
 
 request of the plaintiff, or that he was to have a right to redeem. They aver, that they paid the money and took the conveyance, at the request of their sister, who. is. the wife of the plaintiff; as
 
 they
 
 ■were fearful, that, being a thriftless man, addicted to hard drink, he would waste his substance and leave her in a destitute condition, and they intended to allow her to redeem the negroes, and have the title secured her sole and separate use. They have had possession of Charles ever since ; they allowed their sister to keep Ember-and retain bis wages in the black smith’s shop, for the support of herself and family, from the time of their purchase in 2841 until 1846, when Alfred was substituted for Ember, who was sold for $500. which was applied to the plaintiff’s debts ; since which time, they have also had possession of Alfred, and had no expectation that their-sister would be able to redeem. They aver, that their intention to allow their sister to redeem was as a favor and not as a right, and at no time did they ever admit a right in the plaintiff to redeem or hold any obligation upon him to refund' the $900. They insist that it is iniquitous in him now to attempt to set up a right to redeem and call for an account, since,, during the whole time, the risk-had been theirs, if one or both the negroes had died.
 

 Mr. Puryear, whose deposition has been taken, states» that when he and Poindexter took the bill of sale, there was no understanding that the plaintiff' was to have a right to redeem. But, afterwards, as the price was considered low, and they understood that the plaintiff’s wife-wished to be allowed to pay the $900 and have tbe negroes conveyed to some friend for her use,they concluded to allow either the plaintiff or his wife to. redeem, and informed the plaintiff of this intention, and further informed
 
 *286
 
 him, that they only desired to be indemnified, but did not like the matter to stand in that condition. The witness says, he, and, as he supposes, Poindexter, were under the impression that they were acting in pursuance of some arrangement of the kind, when they conveyed to the defendants.
 

 Another witness says thaf, about, the time the conveyance was executed, he heard the defendant and Larkin Bryan say, that he and his mother were taking the conveyance to give “the plaintiff and his wife,” or‘‘the plaintiff and his family” a chance to redeem.
 

 Another witness says, he was present, and his understanding was, that the defendants were acting fcr the benefit of their sister, and that there was no idea entertained by any of the parties, that the defendants were acting in the matter for the benefit of the plaintiff, or that he was to have a right of redemption.
 

 It is a i ule of the common law, that parol testimony shall not be admitted, to add to, vary, or expl tin written instruments; for the very sound reason, that written memorials are surer and better evidence than the slippery memory of witnesses.
 

 Courts of Equity have made some exceptions to this rule, for the purpose of
 
 preventing fraud;
 
 but the jurisdiction is exercised sparingly, and, many think, with very doubtful policy.
 

 In Equity, plaintiffs are allowed, by making the proper preliminary allegations, as that a certain clause was intended to be inserted in a written instrument, but was omitted by the ignorance or mistake of the draftsman, or by some fraud or circumvention of the opposite party, or some oppression or advantage taken of the plaintiff's necessities, or when an unlawful trust was designedly omitted to evade the law, to call for a discovery on the oath of the defendant. If the fact is confessed, the plaintiff can have relief. If it be denied, although it was for
 
 *287
 
 a long time questioned, it is now settled, that, provided the matter can be established, not merely by the declarations of the parties, or the unaided memory of witnesses, but by facts and circumstances
 
 dehors the instrument,
 
 such as are mere tangible and less liable to be mistaken lhan mere words, Equity will give relief, by considering the clause thus shewn to have been omitted, as if it had been set out. in the instrument.
 
 Streator
 
 v.
 
 Jones, 3
 
 Hawks. 423.
 

 The facts and circumstances “dehors” relied upon in that case, were gross inadequacy of price ; the possession being retained by the plaintiff and the payment of interest ; and there was the preliminary allegation of oppression, to account for the clause of redemption not bring inserted. The plaintiff was a man hard pressed for money and was forced to
 
 consent to the omission of the
 
 clause, the matter being cut short'by the defendant’ssaying “here, take the money you want, and trust to my word.” Many other eases fully settle this tobe law, that, “provided it appear, to have been the real intent of the party to have the clause, inserted and the instrument was put in the form of an absolute deed by ignorance, mistake, fraud or undue advantage,” equity will treat the instrument as if the clause .was inserted,
 
 McDonald
 
 v.
 
 McLeod
 
 1 Ire. Eq. 221.
 

 In
 
 Franklin
 
 v.
 
 Roberts, 2
 
 Ire. Eq. 560, this further restriction is added : “when the answer denies the right of redemption, the proofs must be clear, consistent and cogent, composed of circumstances incompatible with the idea of an absolute purchase and leaving no doubt on the mind”
 

 The cases all show, by what narrow limits the exception to the general rule of evidence is circumscribed. It is allowed to protect against fraud; but it leads to per• jury, and is a weak protection against fraud ; for a man, who will commit a fraud, most usually will swear falsely, rather than
 
 "confess it”
 
 and give up his expected gain.
 
 *288
 
 Hence it is rigidly required, that there should be an allegation, that the clause was intended to be inserted, but was omitted from some of the causes above stated, otherwise there would be encouragement given to secret trusts and the door to let in perjury would be opened wide without any necessity on the ground of preventing fraud.
 

 The above cases are referred to, for the purpose of showing, how entirely short, in
 
 every particular,
 
 the present case falls, of the limits fixed, to the admitted excep • tions to the general rule :
 

 • 1st. The right of redemption is no.t confessed but is positively denied without evasion.
 

 2nd. There is no allegation, that the alleged right to redeem was intended to be inserted in the deed from Puryear and Poindexter to the defendants, or any reason suggested why it should not have been inserted ; if, in truth, there was any such understanding.
 

 3rd. There is no allegation of surprise, mistake, fraud or oppression ; in fact, there could have been no oppression, for the plaintiff was not the debtor of the defendants and they paid the same price, that he had agreed to take from his vendees, which does not appear to have been inadequate; for one of the slaves, the best blacksmith, was sold for @500.
 

 4th. There are no circumstances
 
 dehors
 
 the deed, inconsistent with the idea of its being absolute. The price as above stated was not inadequate. The defendant did not claim or take any evidence of debt from the plaintiff for the 8900.
 

 The possession was not retained by the plaintiff, as if it had been a mortgage. One of the slaves was taken into possession by the defendants immediately; the other was allowed to remain in the possession of the defendants’ sister, who was the plaintiff’s wife, for some four years, when Alfred, who was exchanged for him, was taken into possession by the defendants, and the possession of one
 
 *289
 
 of the slaves, by the defendants’ sister, is not inconsistent with an absolute purchase for the purpose of rendering aid to her.
 

 5th. When the matters connected with th.e trust fund were referred to arbitration, no claim of a right to redeem and call for an account was set up, as to these negroes.
 

 6th. The parol proof of declarations, by which the plaintiff seeks to set up a right to redeem, is vague and unmeaning — no two ■witnesses agree in their recollection —thus giving a striking proof of the wisdom of the rule of the common law, and the necessity of restricting the exception to the rule, by very narrow limits.
 

 We therefore declare our opinion to be, that the plaintiff is not entitled to redeem the slaves.
 

 Per Curiam.
 

 Decreed accordingly.