WESTERN CAROLINA LUMBER CO. v. J. W. STURGILL.

(Filed 23 December, 1925.)

**1. Appeal and Error—Harmless Error.**

In order to set aside a judgment of the Superior Court on appeal, it must be made to appear that the error complained of was substantial, and worked an injustice on the appellant.

**2. Contracts—Writing—Parol Agreements.**

Parol evidence is not admissible to contradict, add to, take away from or vary the terms of a written contract, and all verbal contemporaneous declarations and understandings are incompetent therefor, as the parties are to be presumed to have incorporated in the writing the provisions by which they intended they should be bound in connection with the subject-matter.

**3. Contracts—Fraud—Mistake.**

Where a party to the written contract is able to read and understand it, and nothing is said or done by the other party to mislead him as to its meaning, he is bound by the writing he has thus signed, and it may not be set aside for fraud or mistake.

**4. Same—Equity—Rescission—Cancellation.**

In order to rescind or cancel a contract for fraudulent representations in its procurement, there must be a reasonable representation, express or implied, false within the knowledge of the party making it, reasonably relied on by the other party, and constituting a material inducement to the contract.

**5. Contracts—Agreement as to Increase in Cost—Arbitration—Counterclaim.**

Where a party to a written contract agrees to cut and deliver timber at a certain price, with provision that it was subject to be changed upon the increase of the price of labor or other conditions therein by agreement or by arbitration, and a higher price is accordingly subsequently fixed in the place of that first definitely specified, the party may not thereafter wait until the completion of his contract, and as defendant in an action upon the contract price successfully set up a counterclaim that under the terms of his contract he was entitled to more money for his services upon the ground that the price reached by arbitration was insufficient to cover an increase in the cost to him in the performance of his contract.

APPEAL by defendant from *Oglesby, J.,* and a jury, August Term, 1925, of YANCEY.

Civil action for the recovery of $4,406.82, under contract dated 8 July, 1922.

The material part of the contract in controversy is as follows: "It is understood and agreed by both parties that in case of radical changes in cost of operation that would warrant an increase or reduction in price herein stipulated that both parties are willing to negotiate and make such changes as may be warranted and agreed upon."

Plaintiff alleges: "That the defendant entered upon the fulfillment and performance of said contract and cut and delivered timber to this plaintiff until a time when he complained that he was not getting enough money to pay him for his work, and, under the contract hereinbefore referred to, demanded that negotiations looking toward the payment of a higher price for said cutting and logging said timber than that set forth in the contract should be paid him. Negotiations were accordingly had when it was agreed that the price per thousand should be advanced to $10.00, an increase of $1.50 per thousand, over and above the contract price. That the defendant, without any further demands, made upon the plaintiff, finished said contract, that is to say, finished cutting and delivering the timber mentioned in the said contract. That this plaintiff advanced the defendant, from time to time, sums of money and

at times largely in excess of the amount due him until on 1 March, 1924, the defendant owed this plaintiff the sum of $4,406.82, over and above all just demands, which the defendant has against the plaintiff, the same being overpayment for the said logging and delivering of said timber."

Defendant admits the contract, sets up fraud and mistakes, and alleges: "That the paper-writing involved in this cause, and as set out in the complaint was prepared by the defendant, and it was plainly understood and agreed that the written contract should encompass the terms agreed upon, and especially that part that bound the plaintiff to pay to the defendant the amount to be paid out on account of the rise in price of labor and production in general, if there should be such rise during the life and operation of the contract. That when it was written out, this defendant asked the representative of said plaintiff, who had in charge said contract, if the whole of the contract agreed upon was covered in said paper-writing, and he answered this defendant that it did, and especially did the plaintiff assure this defendant that the contract protected him against the rise of cost of production, labor, etc. That it was there agreed that this defendant should be protected against the rise of cost of production, and if the contract as so drawn and written fails to incorporate that provision, it does not set out in the same the complete contract, and has been left out of the same, either by mistake of the parties, mutual between them, or by the artful design, scheme, and fraud of the plaintiff, as he is advised and believes, and so alleges, and said contract should be so reformed as to speak the actual agreement and contract made between the parties. That following 8 July, 1922, this defendant in good faith proceeded to carry out this part of the contract; went upon the premises and proceeded to cut, log, etc., the logs to the landing as provided for in said contract; that he had not long been engaged in carrying out said contract until labor advanced, and this defendant proceeded to notify the plaintiff of the rise in wages, and the plaintiff from time to time, as wages advanced, advised this defendant to proceed, and procure labor at the advanced price, all in contemplation of the contract made between the parties, and each time that labor advanced the plaintiff was notified, and said plaintiff each time gave orders to procure labor at the advanced price, with the usual caution to get the labor as cheap as practicable, all of which this defendant did, all by the consent, procurement and advice of the plaintiff, and within the terms of the actual agreement between the parties. That it is true, that at one time, the plaintiff raised the price of cutting and logging, as required, to the sum of $10.00 per thousand feet, or a raise of $1.50 per thousand feet, all of which it did within the meaning of the contract and terms thereof, which bound it to

pay the additional cost of production; but, at the time of such raise, this defendant notified the plaintiff that such raise was insufficient to pay the additional costs of production, and that it would be held to the actual difference in costs occasioned by the raise of labor in price, and the costs of production. That it is not true that this defendant owes the plaintiff any sum, whatever, on account of said contract, or any advancements made by it, but the said plaintiff, by reason of said contract, is justly indebted unto the defendant by way of counterclaim, and as an additional recovery, in the sum of $8,870.30, and this is due the defendant after allowing the plaintiff all credits, set-offs, or just demands, including the said advancement of $4,406.82, sued for by the plaintiff in this action."

The issues submitted to the jury and their answers thereto, were as follows:

"1. What amount, if any, is the plaintiff entitled to recover of the defendant by reason of the matters and things alleged in the complaint? Answer: $4,406.82.

"2. What amount, if any, is the defendant entitled to recover of the plaintiff by reason of the matters and things set up in the counterclaim? Answer: Nothing."

Judgment was rendered on the verdict, exceptions and assignments of error were duly made, and appeal taken to the Supreme Court.

The material assignments of error will be considered in the opinion.

*Watson, Hudgins, Watson & Fouts for plaintiff.*
*Charles Hutchins for defendant.*

CLARKSON, J. Pursuant to order of the court, this case was referred to and heard before J. W. Ragland, Esq., referee. At the beginning of the hearing, and before hearing began, the defendant excepted to the trial before the referee and demanded a jury trial and tendered the issues before set forth. The referee, after hearing the evidence, gave judgment for plaintiff. Upon exceptions taken by the defendant, the case was tried in the Superior Court before a jury upon the issues tendered by defendant. The jury answered the issues in favor of plaintiff.

"Verdicts and judgments are not to be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to a denial of some substantial right. *In re Ross,* 182 N. C., 477; *Burris v. Litaker,* 181 N. C., 376." *Wilson v. Lumber Co.,* 186 N. C., 57; *Layton v. Godwin,* 186 N. C., 313; *S. v. Love,* 189 N. C., 774.

*Smith, C. J.,* in *Ray v. Blackwell,* 94 N. C., 10, says: "It is a rule too firmly established. in the law of evidence to need a reference to authority in its support; that parol evidence will not be heard to contradict, add to, take from or in any way vary the terms of a contract put in writing, and all contemporary declarations and understandings are incompetent for such purpose, for the reason that the parties, when they reduce their contract to writing, are presumed to have inserted in it all the provisions by which they intend to be bound. 1 Greenleaf on Evidence, sec. 76; *Ethridge v. Palin,* 72 N. C., 213." *Exum v. Lynch,* 188 N. C., 395; *Overall Co. v. Hollister Co.,* 186 N. C., 208.

The distinction between fraud in the *factum* and fraud in the treaty is ably discussed by *Stacy, C. J.,* in *Furst v. Merritt, ante,* 397. In the opinion various definitions of fraud are set forth. If defendant has sufficiently pleaded fraud, from the entire record, we do not think the evidence sufficient to establish it.

"Defendant could read and write. The contract was discussed by paragraphs with F. B. Duane and when agreed upon J. L. Henderson would write it on the typewriter. When finished, each were given a copy and defendant read it over before signing.

The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence or folly or a careless indifference to the ordinary and accessible means of information." 2 Kemp Com., 485; Smith on the Law of Frauds, p. 110, note.

In the case of *Dellinger v. Gillespie,* 118 N. C., 737, Gillespie could read and write and he signed the contract but did not read it. This Court held: "It is plain that no deceit was practiced here. It was pure negligence in the defendant not to have read the contract. There it was before him, and there was no trick or device resorted to by the plaintiff to keep him from reading it." *Colt v. Turlington,* 184 N. C., 137; *Currie v. Malloy,* 185 N. C., 215; *Grace v. Strickland,* 188 N. C., 373; *Colt v. Kimball, ante,* 169; *Dunbar v. Tobacco Growers, ibid.,* 608.

The principle of rescission and cancellation by reason of fraud, as suggested in the pleadings, in order to constitute fraud of this class, the test is laid down in Adams Eq. (7 Am. Ed.), sec. 177: "There must be a representation, express or implied, false within the knowledge of the party making it, reasonably relied on by the other party, and constituting a material inducement to his contract or act."

Composing the answer to meet defendant's contentions, he alleges that the true understanding he had of the terms which specifically protected him against any rise in the price of production, a material part of the contract, and which bound it to pay to the defendant such difference in cost, was left out by the artful design, scheme and fraud of the plaintiff.

The defendant further alleges: "Such material part of the contract was left out by the design and procurement of the plaintiff, without the knowledge or consent of this defendant, and the plaintiff has thereby wrongfully and fraudulently, as defendant is advised and believes, taken advantage of the superior training, knowledge and education of its representative in dealing with this defendant, who has not had such training and education, and who is unskilled in the drawing of contracts, and who, by reason of his position, had to rely upon the plaintiff." ·

As before stated, defendant could read and write; the contract was read over by paragraphs and agreed upon; he read the contract before signing it. Nothing was concealed from him. The contract was typed— easy to read. Where is there any artful design or scheme, or fraud? If any material part was left out, he agreed to what was written, and it is too late now to complain. He should have refused to sign the contract at the time.

Smith on the Law of Frauds (1907), part sec. 77, says: "A purchaser of land cannot be allowed to shut his eyes either carelessly or wilfully and receive a conveyance of property without using the ordinary means and care that a business man of ordinary capacity would use under the circumstances, and then afterward claim that at the time the deed was executed he understood some other or different estate or interest was to be granted by the deed. To permit this practice would be to open the door to fraud. . . . . The presumption of law is that a person of sound mind will exercise ordinary prudence in making contracts."

In *Newbern v. Newbern,* 178 N. C., p. 4, *Clark, C. J.,* said: " 'In order to correct a deed which is absolute on its face, and to convert it into a security for debt, it must be alleged and proven that the clause of redemption was omitted by reason of ignorance, mistake, fraud, or undue influence,' and the intention must be established by proof, not merely of declarations, but of facts, *de hors* the deed, inconsistent with the idea of an absolute purchase. *Sowell v. Barrett,* 45 N. C., 50, citing *Streator v. Jones,* 10 N. C., 423; *Kelly v. Bryan,* 41 N. C., 283, and saying that 'otherwise, titles evidenced by solemn deeds would be at all times exposed to the *slippery memory of witnesses.*' "

In *Taylor v. Edmunds,* 176 N. C., p. 327, it was held: "It is true, as the defendant contends, the plaintiffs were educated men, and if they executed this deed merely by reason of their failure to read the same, they are bound by their voluntary act, and should not recover. *Dellinger v. Gillespie,* 118 N. C., 737. This is well-settled law, but the evidence in this case tended to show, and does show (as the jury find), that because of the confidential relationship existing between themselves and the defendant, covering a long course of dealings, during which they executed a large number of deeds sent them by Edmunds and Jerome

LUMBER CO. *v.* STURGILL.

for lots sold by them, the plaintiffs had a right to assume that he would submit to them for execution deeds only for lands embraced in the contract, and that they were misled by the manner of submitting this deed to them for execution, sandwiched in with other deeds for property embraced in the contract of 22 March, 1912, and especially that they were misled by the false statement of the defendant's agent and co-grantee, W. G. Jerome, that 'these papers wind up that property.'" At p. 328 it is said: "The mere fact that a grantor who can read and write signs a deed does not necessarily conclude him from showing, as between himself and the grantee, that he was induced to sign by fraud on the part of the grantee, or that he was deceived and thrown off his guard by the grantee's false statements and assurances designedly made at the time and reasonably relied on by him."

Parol evidence will not be heard to contradict, add to, take from or in any way vary the terms of a written contract. The bargain made by defendant turned out to be a hard one, on account of the increase in the operation, hire of labor, etc. Defendant started to work under the terms of the contract. Radical changes in the cost of operations was the test of negotiations and agreement, under the contract, for increase or reduction. The increase that was made was by agreement and went into effect 1 April, 1923, advance of $1.50 over original contract making $10 per thousand fee. Defendant testified: "I demanded an increase before I got through because I needed it. I never demanded any more, but we frequently talked about the advance in wages. I thought at the end of the job was the place to make final settlement." We do not so construe the contract as to negotiating and agreeing. This should have been done as the radical changes took place in operation—like the agreement of raise 1 April, 1923.

From the view we take of the entire record, defendant's assignments of error cannot be sustained. They are not material from the construction we give to the contract. The court below, notwithstanding the fact defendant could read and write and knew fully what he was signing, and although no issue of fraud or mistake was tendered before the referee or in the Superior Court, allowed evidence to be introduced on these aspects, charged the jury clearly and ably on what constituted fraud and mistake, and gave the contentions of each side fairly and accurately. The court below, under the facts and circumstances of the case was more favorable to the defendant than he was, in law, entitled to under the contract. The jury found for the plaintiff.

From the entire record, we can find no prejudicial or reversible error.

No error.