MANUFACTURERS' OIL AND GREASE CO. v. T. S. AVERETT.

(Filed 3 November, 1926.)

**1. Contracts—Fraud—Deceit—Evidence—Actions—Defense—Burden of Proof.**

Where the vendee's defense to an action upon a contract of sale of goods is fraud and deceit, the burden of proof is on him to show it only by a preponderance of the evidence.

**2. Same—Jury.**

It is reversible error to withhold from the jury the issue of fraud or deceit set up in defense of an action upon a contract of purchase of goods, when there is any legal evidence thereof construed in the light most favorable to the plaintiff.

**3. Same—Written Contracts—Parol Evidence.**

The rule that one who can read or write, with full opportunity to do so, may not sign the written instrument and afterwards seek to set it aside for fraud in its procurement contrary to the express terms of the instrument, does not apply when the person signs under the assurance of the vendor's agent that the writing expressed truly the terms they had agreed upon, and conditions at the time were such as to render the reading thereof of great inconvenience, and the signature of the purchaser was wrongfully secured upon the "honor" of the agent that it was correctly written.

**4. Same—Rule of Prudent Man—Evidence—Questions for Jury.**

Upon the defense of fraud and deceit interposed to an action upon the purchase and sale of goods, and under the evidence the question is presented as to whether an ordinarily prudent man would have signed as purchaser under the circumstances of the case, an issue arises for the determination of the jury.

APPEAL by defendant from *Devin, J.,* at February Term, 1926, of GRANVILLE. Reversed.

The plaintiff brought this action in a court of a justice of the peace for the recovery of $24.75, alleging a sale and delivery of 33 gallons of Ford automobile oil, at 75 cents a gallon, less a credit for freight. Contract given in writing for same by defendant.

The defendant denied the right of plaintiff to recover any sum whatever on the ground that he had contracted to buy only 5 gallons of oil, and that the figures 33 gallons, were fraudulently inserted in the contract without his knowledge or consent, and that the 5 gallons of oil which he had ordered had never been delivered to him.

The justice of the peace rendered judgment for the amount claimed by plaintiff, and defendant appealed to the Superior Court. On the trial in the Superior Court, the defendant, T. S. Averett, testified as follows: "I think it was in November, 1924, that a representative of the Manufacturers' Oil and Grease Company came to see me. I was in the barn stripping tobacco one evening late in a mighty big rush to get it ready to sell it the next day. He came in and told me he was representing some oil company, and I asked him how much he was selling, and he said thirty-three gallons. I told him I did not have anything but a Ford car and I did not need that much. I told him I would take five gallons. We did take five gallons, and when he made out the order I looked it over and said, 'I can't see and I am trusting to your honor. It is for five gallons, I suppose,' and he said 'Yes.' I signed it but I could not see. I thought it was for five gallons. I told him why I could not see. It was dark and mighty near sundown, if it was not sundown, and I did not have my glasses. We were two hundred or two hundred and fifty yards from my house. I told him

I would have to send to the house and get my glasses. I supposed it was for five gallons. I told him I trusted to his honor when I took the paper. If I had known it was an order for twenty-five gallons I would not have signed it. He called it a drum. I always thought it was for five gallons until it came, and I got a notice it was thirty-three gallons waiting for me at the office. I had some correspondence with the Manufacturers' Oil and Grease Co. when I got that notice. The oil was shipped to me, but I did not use it. I have a letter from the Manufacturers' Oil and Grease Co. in regard to this." Witness produced a letter dated 15 January, 1925, from the Manufacturers' Oil and Grease Co., of which the following is an excerpt. "We have your letter of recent date and note your remarks that you have purchased only five gallons of oil from our salesman, Mr. T. R. Harper. Of course we are surprised to receive such a letter as you have sent us, Mr. Averett, and no doubt you are correct when you state that you have ordered only five gallons." "I think the letter came after the oil arrived. I certainly did rely upon this statement of the salesman that the contract was for five gallons. If I had known that it was for a greater amount I would not have signed the order. I could not read the order without my glasses. I remarked that I would have to send to the house to get my glasses, and he said it was for five gallons, that was all." Question by judge: "Did he do anything to keep you from getting your glasses?" Answer: "I was in a hurry, and he seemed to be in a hurry, and it was getting dark, and he said it was for five gallons." On cross-examination the witness testified: "I signed that order, but here is where he done me, over here somewhere (indicating on contract). I signed here. The agent did not do anything to prevent me from seeing it. I trusted to his honor when I asked him if it was for five gallons, and he said it was for only five gallons. He did not do anything to keep me from reading the paper. I told him I trusted to his honor. It was two hundred or two hundred and fifty yards from my house."

The testimony of B. H. Averett, son of defendant, was to the same effect as T. S. Averett.

*No counsel for plaintiff.*
*A. W. Graham & Son for defendant.*

CLARKSON, J. To defeat the alleged contract, the defendant sets up actionable fraud or deceit in the procurement of the contract. The court below was of the opinion that defendant's evidence was not sufficient to be submitted to the jury upon an issue of fraud. We cannot so hold. On the issue of fraud, the burden is on the defendant to satisfy the jury of the fraud by the greater weight of the evidence or a pre-

ponderance of the evidence. *McNair v. Finance Co.,* 191 N. C., 715. Not so where it is proposed to correct a mistake in a deed or similar cause—the *quantum* of proof. The evidence must be clear, strong and convincing. *Speas v. Bank,* 188 N. C., p. 528.

Where there is *any* evidence, it is the duty of the court below to submit it to the jury, and the weight of such evidence is for the jury to determine. On the issue of fraud set up by defendant, the evidence is to be taken in the light most favorable to him and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

In *Boyden v. Clark,* 109 N. C., 669, it is said by the Court: "If a prudent person, in the exercise of ordinary care and occupying his position, would, by prosecuting his inquiries further or extending his investigations, have ascertained the truth before acting, relief would be refused on the ground of negligence."

In *Taylor v. Edmunds,* 176 N. C., p. 328, it is said: "The mere fact that a grantor who can read and write signs a deed does not necessarily conclude him from showing, as between himself and the grantee, that he was induced to sign by fraud on the part of the grantee, that he was deceived and thrown off his guard by the grantee's false statements and assurances designedly made at the time and reasonably relied on by him."

Ordinarily a person who signs a paper-writing, if he can read, it is incumbent on him to do so or have it read to him. *Colt v. Kimball,* 190 N. C., p. 172.

In that case the defendant was above the average in education, was on the board of education in his county for years, and a farmer on a large scale and man of business experience wider than the average farmer. He was at his home when the contract was signed and made no effort to have the contract read. The print was fine, his glasses were not strong enough. "Agent did not do anything particular to keep me from reading the contract." This evidence was held not sufficient to establish fraud.

In *Lumber Co. v. Sturgill,* 190 N. C., 780: "Defendant could read and write. The contract was discussed by paragraphs with F. B. Duane, and when agreed upon J. L. Henderson would write it on the typewriter. When finished, each were given a copy and defendant read it over before signing." This was held not sufficient to establish fraud.

Defendant's evidence succinctly: Late in the evening, it was dark and mighty near sundown, defendant was in his barn stripping tobacco. He was in a mighty big rush to get it ready to sell next day. Plaintiff's agent came to the barn representing plaintiff oil company. Defendant asked him how much he was selling and he said thirty-three gallons.

Defendant told him he had a Ford car and did not need that much, but would take five gallons. When the agent made out the order he looked it over, and defendant said to the agent, "I can't see, and I am trusting to your honor. It is for five gallons I suppose," and the agent said "Yes." Defendant signed it, but could not see. He told the agent why he could not see; it was dark, mighty near sundown, and he did not have his glasses. They were at his house 250 yards away and would have to send for them. He relied on plaintiff's salesman's statement that the contract was for five gallons. Question by judge: "Did he do anything to keep you from getting your glasses? Answer: I was in a hurry, and he seemed to be in a hurry, and it was getting dark, and he said it was for five gallons."

In *Leonard v. Power Co.,* 155 N. C., p. 14, *Allen, J.,* well says: "We are not disposed to modify the principle laid down in *Dellinger v. Gillespie,* 118 N. C., 737, and many other cases, that the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so. 'The law aids those who are vigilant, not those who sleep on their rights.' This rule cannot be invoked, however, in behalf of one who induced sleep and lulls to security, nor does it require men to deal with each other upon the presumption that they are rascals," and quotes as follows from *Walsh v. Hall,* 66 N. C., p. 239: "No specific rule can be laid down to what false representations will constitute fraud, as this depends upon the particular facts which have occurred in each case, the relative situation of the parties and their means of information. Examples are given in the books which have established some general principles which will apply to most cases that may arise. If the falsehood of the misrepresentation is *patent* and a party accepts and acts upon it with 'his eyes open,' he has no right to complain. If the parties have equal means of information, the rule of *caveat emptor* applies, and an injured party cannot have redress, if he fail to avail himself of the sources of information which he may readily reach, *unless he has been prevented from making proper inquiry by some artifice or contrivance of the other party."* He quotes and approves the charge of the judge in the court below (now *Associate Justice Adams)* as follows: "It is true that a person who can do so is generally required to read a paper before signing, and his failure to do so is negligence for which the law affords no redress. This rule does not apply, however, in case of positive fraud or false representation made by another party, by which the person signing the paper is lulled into security or thrown off his guard and prevented from reading it, and induced to rely upon such false representations of fraud."

The principle of rescission and cancellation for fraud—all the elements of fraud must exist.

There are various and sundry definitions of fraud. See *Furst case, supra; McNair v. Finance Co., supra; Corley Co. v. Griggs, ante*, p. 173.

In *Dunbar v. Tobacco Growers*, 190 N. C., at p. 610, it is said: "In an action between the original parties to an instrument, as here, if it be made to appear that one induced the other to execute a paper-writing upon his misrepresentation as to its contents, and the representation turns out to be untrue and fraudulently made, the party who relied upon it, to his injury, if he acted with reasonable prudence in the matter, is not bound to him who deceived him into executing the instrument. *Furst v. Merritt, ante*, 403."

Did the defendant, in not reading or having the instrument read to him, act as a prudent man under all the facts and circumstances of the case, or was he on his own testimony guilty of negligence? We think this was a matter for the jury.

*Savage, C. J.*, in *Bixler v. Wright*, 116 Maine Rep., p. 139, says: "The law dislikes negligence. It seeks properly to make the enforcement of men's rights depend in very considerable degree upon whether they have been negligent in conserving and protecting their rights. But the law abhors fraud. And when it comes to an issue whether fraud shall prevail or negligence, it would seem that a court of justice is quite as much bound to stamp out fraud as it is to foster reasonable care."

As the testimony is fully set forth, we will not comment on it, as the case goes back so that it may be passed on, under proper instructions, by a jury.

Reversed.