Chief Justice Robertson
delivered the opinion of. the Court.
Doubting the correctness of the opinion which was delivered in this case, we directed a re-argument.
The case has been fully argued on the re-hearing; •and we are still of the opinion that the contract is a mortgage, and that if it were not, it would be proper 'to withhold a specific execution of it.
The land had been assigned to the wife ofEdring-ton, (before he meirried her) as her dower in the estate of her first husband, Jackson.
On the 21st of May, V823, Edrington and Cook executed to Harper, a bond in the penalty of $624, with the following condition: “That whereas, the said ■Cook and Edrington, have this day sold to said Harper, for the sum of $312, to them paid, the life estate held by them or one of them, in and to the land laid oiF by commissioners to Mary, the wife of said Edrington, but formerly the widow of John Jackson deceased, as her part of the tract of land on which said Jackson resided at his death, to which she was entitled.as her dower. Now, if said Cook and Edrington shall, on or before the 21st day of September.next, surrender possession of said premises, and convey said land, by a good title, warranting the same against them and against said Mary Edrington, and all claiming under them, to said Harper and his heirs or assigns, then' this obligation to be void, &c.”
In all doubtful cases, contract will be construed to be mortgage, rather than conditional sale. Execution of defeasance, simultaneously with absolute conveyance, constitutes them, in law, one instrument and wilt generally make contract mortgage.
Simultaneously with the execution and delivery of this bond, Harper fcxecuted and delivered to Cook- and Edrington, the following defeasance: ‘*1 have day bought- of Seth Cook and Benjamin Edring-ton, the dower right of Mrs. Mary Edrington, formerly Jackson, in and to part of the tract of land on which Jo-in Jackson resided at his death, for the sum of $3i 2. I do hereby agree, that if the) choose to repay me said money with six per centum interest, on or before the 21st day of September next, I will cancel the contract with them; but it is optional with them to do it or not.; and if accepted and fulfilled by that day, it is well and good. Given under my hand tin's 21st May, 1823. ADAM HARPER.”
It is often very difficult to discriminate between -mortgages and conditional sales. Every case must be determined by,a considi ration of its own peculiar circumstances; and it is proper, that no specific rules should be defined for distinguishing mortgages from conditional sales: otherwise, the usurer, with the rules before him, would be able to evade the laws ■ against usury, and oppress the necessitous with impunity-
But-in all doubtful cases, the law will construe the contract to be a mortgage: because such a construction will be most apt to attain the ends of justice and prevent fraud and oppression. See Skinner vs. Miller; V Littell’s Reports, 86.
The execution of a defeasance, simultaneously with the absolute conveyance, constitutes them in contemplation of law, one entire instrument, as much as if the defeasance had been incorporated in the conveyance-; and will generally have the effect of making the contract a mortgage. Powell on mortgages, 67.
it is a general rule, that i‘where land is conveyed absolutely, and the grantee, by a separate instrument, or defeasance, covenants' to re-convey to the grantor, on his paying a certain sum of money, the transaction amounts only to a mortgage.” Peterson vs. Clark; XV. Johnson, 205; Dey vs. Durham; II. Johnson’s Chancery Reports, 189.
Where A, gave a regular bill oí sale of three horses to B, for the consideration of $200; and B, at the *355 4amc time, gaye to A, a writing, or defeasance, engaging, on the payment of .§¿10 to him hy A, in 14 days, to’ deliver the horses to A, it was held that this was a mortgage.” Brown vs. Bemont and Strong VIII. Johnson, 75.
Parol proof of'pmrtiesj1011 adm s,ib)e to Hi(1 in con* writing off doubtful import on its ^^00^°-wuysudmissi-ble to prove o^ui^aiTtv^’ 0f contract, or cousidera-Í!“n’ It tran-aotion be “a borrow->n'í «n'llend-that'-Ved'ab-solute on its face, was in°“ly foVmTiII/I h purchaser after his purchase, that turner owner Xase property within conditional sale,
From this general rule of construction; there are exceptions. The intention of the parties is the only true and infallible test; that iutontion is to be coi-lected from the condition or conduct of the parties ns well as from the face of the writlen contract. Parol evidence is not admissible to contradict the writing: but when the chancellor is asked to assist (he vendee, in enforcing (as in this case) an alleged equity, a rebutting equity may be proved by parol testimony; and even when the vendor is the complaining party, proof of the conduct and condition of the. parties may be admitted to aid in giving construction to a writing which maybe of doubtful import 011‘its face. Parol evidence is always admissible to prove fraud or usury, or the illegality of the contract, or the consideration.
. i he fact that the. real transaction between the parties, was a borrowing and lending will, whenever, or however it shall appear, show that a deed, absolute on its face, was intended as a security for money; and whenever it can be ascertained to be a security for money, it is only, a mortgage, however .artfully it may be disguised. '
But if a 1 bona fide” purchaser of property at sheriff’s sale, agree, after his purchase, that the former owner may re-purchase the property within a given time, this, if there be no other fact to control the construction, will be considered a conditional sale, and not a mortgage; Hany vs. Marsh, II. Marshall, 47; Flowers vs. Sproule, &c. Ib. 54.
But the reason for this interpretation is obvious; and is perfectly consistent with the general rule of construction which has been suggested. It is manifest from the nature of the transaction, that there was no borrowing or loaning of money; and that the deed or certificate of sale given by the sheriff to the purchaser, could not be intended as a security for money. Therefore, and therefore only, in such a case, char-acteiized by no other circumstances than those which have been mentioned, the contract could be construed to be a conditional sale.
H no othf-r fact ti> illiis-trate intention of par-tios, than absolute sale by one and sira-uitaneous condition of defeasance, delivered by other, court will construe contract to be morta;as;e. In such case, therefore, “onus” devolves on party , who insists that contract is conditional sale.
There may be many other cases in which the nature or subject matter of the contract may authorize the inference that the contract was not a mortgage, but a conditional sale. -
But the language of the contract alone, will seldom justify the construction, that it was a conditional sale» Here the general rule applies; and if there be no other fact to illustrate the intention of the parties, than the simple circumstance, that the written contracts shows an absolute salé by one to the other, and a simultaneous condition of defeasance delivered by the latter to the former* the court will incline to the construction, (hat the contract was a mortgage, rather than a conditional sale.
In such a case, therefore, the “onus” devolves on the parly who insists that "the contract was a conditional sale; and if he. shall fail to exhibit any fact tending to show that it. was a conditional sale, other than the written evidence of contract, he must be content to submit to it as a mortgage.
In the case of Gray vs. Prather, II. Bibb, 225, this court decided that the contract was a conditional sale. But that decision is consistent with the general rule which has been extracted from Powell and other authorities. Independently of the sale and the condition, there were other facts, which clearly showed that the contract was a conditional sale; and these fads alone, are assigned as the reasons for the opinion:
1st. Prather having an execution against Gray, bought his slave at more than Ms value, and was to credit the execution with the sum agreed to be given for hirm- This fact would indicate that the sale of the slave was not a security for money: because the amount to be secured, exceeded the value of the slave; and because, the debt being secured by replevin bond, them was no necessity for a mortgage on the slave, as an additional security.
2d. The agreement stipulated, that if the slave should die within the prescribed period for, the re* purchase, Gray should sustain the loss. This provision would be prudent and precautionary in a conditional sale; but it would be superfluous in a mortgage.
*357 These facts showed undeniably, that the contract must have been a conditional sale.
In the case of Prather vs. Norflet, I. Marshall, 169, this court decided that the contract was a conditional sale, because, by the agreement Norflet, who purchased the negro from Gray, and agreed to. re-deli ver him,' on condition (hat Gray would pay him a certain sum, on or before a given day, zúas to silStain the loss if the slave should die in the mean lime. This fact was alone sufficient, to show that the contract was a conditional sale, and not a mortgage.
In the case of Prince vs. Bearden, I. Marshall, 170’ .the contract was construed to be a conditional sale’ because, among other reasons, it stated expressly’ that it turas a conditional sale, and there was no fact' sufficient to countervail this positive stipulation. ■That this reason would be sufficient in all cases, may not he conceded. Nor is it necessary to prove its sufficiency in the case of Prince vs. Bearden. For if' that case y ere correctly decided, the reason assigned, is the only one winch can sustain it; and shows that the case was different from one in which the only evidence is a contract (without such a stipulation) of sale, and an accompanying defeasance. .
We know of no case in which a contract has been construed to be a conditional sale, unless some fact appeared, in addition to the simple sale, with the ordinary condition oí defeasance.
We should feel ourselves authorised, therefore, to construe the contract in this case, to be a mortgage.
The only circumstance which can affect this construction is, that it is declared in the condition, that it shall be optional with Cook and Edrington whether^they will pay the money or not. We do not consider this circumstance conclusive, or even very formidable. It is no more than virtually the fact in every mortgage. In a mortgage it is discretionary with the mortgagor, whether the condition shall be forfeited or not. If this contract be a mortgage;, Harper had his remedy for enforcing the payment of the money due to him.
But if the option in the condition,should have more influence on the construction of the., contract, than *358 we have supposed that it is entitled to, there are other.facts in the case, which effectually neutralize it, and.; lend to fortify the inference that the contract is a mortgage.
1st. It is evident that Edrington was in need of. money, and desired to borrow it; otherwise it is not probable that he would have ventured to dispose of his wife’s dower in her first hushand’s land; or if he had been disposed to sell it, he would not have been so desirous to repurchase it, for the same price which he was to receive, with'legal interest on it. It results, as probable, that his application was for a loan, and that he did not mean to sell.
2d. It is not probable that he would-have bound himself to deliver the possession in September, if he had soid or intended to sell the land, because, as he was living on the land, it is presumable that the object of retaining the possession beyond the 21st of May, (the date of the contract) was to have the benefit of the annual crop. But he might not only have been frustrated in this object;- but might have planted and matured a crop for Harper, if he had surrendered the land to him in September. This fact strongly evinces that the intention of the parties was, that the time was fixed only for the purpose of determining when the money should be payable; and that the condition should operate only “mierrorart.”
3d. The bond shows on its face, that none of the parties knew the exact nature of the title, nor who rightfully held it. Now, Harper would hardly have been willing to purchase by executory contract, for a consideration^ advanced,a tract of land, without ascertaining who owned it,'or whether his vendors had a right to sell. But if he had loaned his money, he might, and probably would have preferred to take a lien on whatever right the borrower might have to the land, as an additional security for the payment of. the money.
4th. The contract is executory. This is an important fact. In “conditional sales,” the title generally: passes, and the property is held at the risk of tire vendee.- The court would be even less inclined to -consider a contract for land a conditional sale, than the same kind of a contract for slaves or personality. Because the land is not liable to the casualties inci- ) ' *359 dent to personal, and especially livifig property; and therefore, the vendee incurs no risk as to its continued existence.
Fact that contract is executory, will perse,make it mortgage, rather than conditional sale, cieteris paribus.
But in addition to this, the fact, that Edrington and Cook, only agreed to convey to Harper the land on condition that they should fail to pay him his money, on or before a designated day, is not only material, but should he almost, if not altogether decisive of the interpretation of the contract. Equity not only relieves from forfeitures and penalties; but is-opposed to sucli a construction of a contract as will produce a penalty or forfeiture; and the chancellor will not give such a construction unless the contract be insusceptible of any other. In equity, time is not often essential.
In this case, the legal title remained as it was before the date of the contract. Edrington and Cook agreed to convey it on the 21st of September, and to surrender the land with all that should belong to it, unless they should, on or before that day, repay to Harper, a certain sum. Edrington retained the possession. If the subject matter of (he contract had been a slave, 'the loss would have fallen on Edrington and Cook, if the slave liad died before the 21st of September, 1823; because they had not parted with either the possession ortitle. They had only promised to do so on a future contingency, which had not occurred before his death. This could not, therefore, be construed to be a conditional sale, in which Ihe right passes, defeasable on,a future condition; and in such a case, the vendee would still be entitled to his money, although he had lost one of his securities for his indemnity. Such is a mortgage; the loss or destruction of the thing mortgaged, does not destroy or impair the right of the mortgagee to his money, but only diminishes his security.
The fact that a contract is executory, will per se make it a mortgage, rather than a conditional sale, “certeris paribus.'’’
5th. Although there is nodirect proof of inadequacy; yet we are satisfied from the whole aspect of the case, that'$312, even if it were specie, was an inadequate consideration for the interest in the land. Inadequacy alone, may not prevent the specific enforcement of *360 a contract. But it may be evidence of fraud; and is, we think, in this case, some evidence to show that the contract was a mortgage.
Husband may convey his right to profits of his wife’s dower lands, during tov^rture.
Chancellor will not compel or invite husband to influence wife to surrender right which law has vested in_her.
•Butin the second place, if the contract be a conditional sale, it ought not to be specifically enforced for three reasons. « j
1st. Harper has not relieved it from the aspect ■which it exhibits, of a hard and oppressive contract. As he may be indemnified b)^a restitution t)f his money, the chancellor will not give him the land until he can exhibit at least the specious semblance of a contract, perfectly fair, plain, undisguised.
2d. All the right which Edrington had to the land, he acquired by his marriage. He has, therefore, a right to the profits during coverture. This he may convey to another. He can convey no more. He has covenanted, not only to convey all Ms right; but also that of his wife, if the wife survive him, the land will be hers during her life. Will the chancellor compel the husband to procure from her a surrender of this eventual interest? Never. The law gave it to her; and it will not, it cannot take it away without her consent.
The civil law, justly famed for its wisdom and equity, recognizes the wife as a legal,as well as amoral being; and therefore, protects her individual rights, even against the power of the husband. This principle of the civil law has never been adopted in all its latitude in England, or in any of the American states, except Louisiana. But even where the common law still prevails as a system, some of its ancient iron doctrines on'the rights and duties of baron and feme, (the remnants of feudality) have, after a stubborn conflict, resembling that betwixt ignorance and knowledge, barbarism and civilization, yielded to some of the more mild and benevolent principles of the civil code.
One of the fruits of this progressive innovation on feudalism, is the modern doctrine, that the chancellor will not compel, or even invite the husband to coerce or influence his wife to surrender a right which the law has vested in her. To enforce the contract in this case, as a contract of sale, would virtually despoil Mrs. Edrington of her contingent right to the land. *361 For it is a contract for the interest of the wife, as well as that of the husband, and to compel the bus-band to make a warranty against the 'right of the wife, is indirectly operating upon her, through him, when she is no party, if she were a party, and. would freely consent to the decree, this objection to it would be removed. But withoutherconsent,obtained!egally, and manifested by the record, the court should-not decree against Edrington, more than a conveyance of his own interest, especially as Harper made his contract with full knowledge of the right'of- the wife.
Denny,Mayes and Monroe, fot plaintiffs; fjoggin and Loughborough, for defendant. ,*■'
3d. If the contract be a conditioned sale, it is not ao clearly so, as to justify a specific execution. In such a case, doubt must result in forbearance to act.
Wherefore, the former opinion must remain unchanged.
But, on reconsideration, we are disposed to think, that it would be proper on the return of the case to the circuit court,to permit Harper to proceed, under his prayer for general relief, for a foreclosure of his mortgage. If he shall choose to do so, he should make Mrs. Edrington a defendant. Then if it should appear, (as hinted in the record) that her dower has been secured to her, by any legal and available conveyance, the court should render a decree in favour of Harper, for whatever shall appear to be justly due to him, against Edrington and Cook “in personam” only. Such a decree the chancellor.-will have the power to make, as he will have possession regularly of the cause; and there is no note for the money, or other evidence than the mortgage, that it: is due. But if it shall appear that Edrington has a legal interest in the dower, the court may subject that interest to the payment of the amount which may be decreed to Harper. And if the wife freely consent to it, the whole dower, as well as her potential interest, as his vested right, may be sold in satisfaction of the decree, if he and Cook shall fail to satisfy it. ‘
Therefore, the former mandate is set aside, and the case remanded for such further proceedings and decree, as shall be conformable to this opinion.