This action was brought by the plaintiffs on the theory that their intestate and ancestor, C. H. Sandlin, at the request of the defendant B. S. Kearney, who wished to own the same, but was unable to raise the money, had purchased a tract of land on 1 March, 1880, at public auction from W. A. Davis, administrator, and commissioner of the court, for the sum of $712, and received a deed therefor to himself, upon the agreement and trust that he would "reconvey" the land to Kearney when he paid the amount of Sandlin's bid at the sale, and, in the complaint, it is added, in the way of what seems to be a conclusion of fact or law, "the said B. S. Kearney agreeing to purchase the land from said Sandlin and to pay the amount of the bid, with interest." It is then alleged that Kearney took possession of the land and has been allowed to occupy it ever since the deed was made to Sandlin. There are other allegations to the effect that Kearney was related to Sandlin, and for this reason he was permitted to remain in possession of the land, but that he paid interest on the debt to Sandlin up to 1 January, 1885. Plaintiffs demand judgment for the possession (598) of the land; that it be declared that the defendant is indebted to them in the sum of $712, with interest from 1 January, 1885; that, on default of the payment of the same, the plaintiffs be adjudged to have a lien upon the land for their claim, and that it be sold to pay the same. The defendant admits the allegations of the complaint, subject to the following explanation, namely, that the land was bought at the sale by Sandlin at the request of the defendant and for him, Sandlin agreeing to hold the title for the defendant until he should pay the amount advanced by Sandlin or the price paid by him to Davis, with 8 per cent interest from 1 March, 1880, and that defendant paid the interest to *Page 472 
January, 1885, but has paid nothing on the debt since that time. This separate averment of the answer is admitted in plaintiffs' reply. The defendant then sets up a counterclaim, in which he alleges that in 1880 he contracted to buy from E. G. Brown, whose tenant he then was, a lot in the town of Franklinton for $1,000, to be paid in cash, but that, having only $300, he paid that amount on the purchase money and applied to C. H. Sandlin for the loan of the balance, $700, which was advanced to him by Sandlin upon the agreement that the land should be conveyed to Sandlin by E. G. Brown, the vendor, as security for the said loan by Sandlin to him, which was to bear 8 per cent interest until paid. That interest was paid to 1 January, 1885, when Sandlin took possession of the land and retained it until the time of his death, and plaintiffs have since had possession of it.
The plaintiffs, in their reply, admit these allegations of the counterclaim, but deny that C. H. Sandlin took possession of the lot in 1885 under any agreement with the defendant other than this, that Kearney, being unable, on 1 January, 1885, to pay the loan of $700 made to him, which with accumulated interest amounted to $938, surrendered possession of the lot to Sandlin, and formally abandoned his equity therein.
The jury, upon a single issue submitted to them, found that Kearney had not "formally" abandoned his equity. Both parties pleaded (599) the statute of limitations, in every conceivable form, and the case was heard by the court upon the pleadings and admissions of the parties, as herein set forth, and the deposition of B. F. Bullock, a witness for the defendant, whose testimony tended to sustain the plaintiffs' version of the facts, so far as they relate to the lot transaction. There was no request for the submission of any issue to the jury, except the one already mentioned, and no prayer for instructions. The court adjudged that as to the Davis tract, containing 13 acres, the relation of vendor and vendee had been established, and the possession of Kearney from 1 January, 1885, without any payment to Sandlin, did not bar the right of the plaintiffs, under the statute, to have the land sold to pay the purchase money, and a sale was thereupon ordered. As to the town lot, the court held that the transaction between the parties created the relation of mortgagor and mortgagee, and that the possession of Sandlin since 1 January, 1885, without any payment on the debt or any accounting for rents and profits, barred the defendant's recovery, under the statute, upon his counterclaim. Judgment was entered according to these rulings and for costs in the action, against the defendant, who has appealed therefrom to this Court.
There is a suggestion in the defendant's assignments of error that he was entitled to have the two transactions in regard to the Davis tract and the town lot considered together, and that, when so coupled, the court should have decided that the debt secured by the deed to Sandlin for the Davis tract had been fully satisfied and discharged by the receipt of rents and profits by the plaintiff while in possession under the other deed. No connection between the two matters is shown by proof, though it is alleged in the answer that by a sale of a part of the town lot and the collection of rents, Sandlin had received enough to pay both debts. But as our decision will practically achieve the same result for the defendant, we need take no further notice of this contention, if it is in such (600) tangible form as to permit us to do so.
In our opinion, the judge erred in holding that the relation of vendor and vendee was created between the parties by their arrangement with respect to the Davis tract. There is no point made as to the statute of frauds, and the case must be determined upon the admission of the parties. If the deed of Davis to Sandlin is to be considered, upon the facts relevant to that question, as a mortgage, then it must follow from the other facts that the statute of limitations, which is pleaded in the answer, is a bar to plaintiff's recovery. If the plaintiff's own statement, in his complaint, of the transaction does not make him a mortgagee and the defendant a mortgagor — and this we need not decide — the defendant's allegation, which he admits, surely impresses that character upon the relation of the parties.
There are no special words required to constitute a mortgage. The true test is to ascertain whether the conveyance is a security for the payment of money or the performance of any act or thing. If the transaction resolves itself into a security, whatever be its form, it is, in equity, a mortgage. "The rule which converts an absolute deed into a mortgage, in accordance with the intention of the parties that it should be held only as security, applies not only to conveyances, voluntarily made by the grantor, but also to deeds received by purchasers at judicial sales, when the purchase was made under an agreement or arrangement with the debtor that the title should be held only as security for a debt or loan, and should be defeasible on payment of the money due. Nor need the deed even be made by the debtor; it is sufficient if the debtor, who claims to occupy the position of a mortgagor with the right of redemption, has an interest, legal or equitable, in the premises, and the grantee of the legal title acquired it by the act and assent of the debtor and as security for his debt." 27 Cyc., 993. The law looks to the substance and not the phraseology. It goes behind the mere words of the parties to find their real meaning and intent, and when found, it administers *Page 474 
(601) their rights accordingly, and it matters not how this intent may be veiled or concealed by language. It searches for the true, and not the false, and brushes aside all impediments in the way of finding it. Chancery suffers itself to be little embarassed with the forms which any transaction may assume, and, therefore, in whatever hand the fee may remain or however disguised may be the terms, if the real object be the taking or holding of land for the security of a loan or debt, it is, in equity, a mortgage, and, if necessary, the subsequent conduct of the parties with reference to the matter may be examined to ascertain their true intent, as the giving a note for the money or receiving part payment or interest on the same. Campbell v. Worthington,6 Vt. 448; 20 A. E. Enc. (2 Ed.), 944-949. It can make no difference, in the application of the principle, whether the deed is made directly from the vendor to the party alleged to hold as mortgagee, or by the party claiming the equity of redemption to him, or that the legal title never was in the debtor. Carr v. Carr, 52 N.Y. 251;Balduff v. Griswald, 9 Okla. 438. It all comes back to the same test, Was the deed made to secure a debt or was the land bought by one party for himself, with an agreement to sell it to another? In our case it appears that Sandlin advanced the money, at the request of Kearney, and the land was bought for the latter. His equity is, therefore, as complete as if he had bought it himself. When Kearney requested Sandlin to advance the money to him for the purpose of making the purchase, the law implied a promise by Kearney to pay back the amount so advanced, with interest, and this established the relation of debtor and creditor, as much so as if Sandlin had directly loaned the money to Kearney and delivered it to him, and the latter had, in turn, paid it to the vendor. The making of the deed by the vendor at Kearney's instance, to Sandlin, is the same, at least in equity, as if it had been made to Kearney and he had conveyed it to Sandlin; otherwise, we would sacrifice the very substance of the transaction to its form. Suppose Sandlin had given Kearney a writing expressing the same agreement as that admitted in this case. Would it not be a mortgage? As we have it, the (602) admission of the parties in their pleadings stands for the writing. The contract is the same, though it is not written. It must be borne in mind that Sandlin, according to the facts and not merely his contention, bought for Kearney and not for himself. He who does an act through the medium of another is, in law, considered as doing it himself, and it was, therefore, substantially a purchase by Kearney from Davis. Looking at the real transaction, we find that Kearney bought the land and Sandlin, at his request, loaned him the money to pay for it, taking the title to himself as security for its payment. These are the naked facts when stripped of mere verbiage. In the Vermont case we have *Page 475 
cited, the distinction between a contract for a sale of land and a mortgage is sharply drawn, and it was held by that Court that as advancements were made by the party having the legal title, they became a loan, and consequently a debt against the party to whom they were made, and he was subject to suit therefor, and that in this feature of the case the deed was really a mortgage; and of like import is Carr v. Carr, supra, wherein it was said:
"It is well established that a deed, absolute on its face, can be shown by parol or other extrinsic evidence to have been intended as a mortgage; and that the relation of mortgagor and mortgagee being thus established, all the rights and obligations incident to that relation attach to the parties. It is not material that the conveyance should be made by the debtor or by him in whom the equity of redemption will exist. It is sufficient if the debtor and he who claims to occupy the position of mortgagor with the right of redemption has an interest, legal or equitable, in the premises, and the grantee of the legal title has and acquired such title by the act and assent of the debtor, and as a security for his debt. (Stoddard v. Whiting, 46 N.Y. 627.) In the case cited the plaintiff sought to redeem the premises from the defendant, who had taken the title upon paying a balance due upon a contract of purchase held by the assignor of the plaintiff, who had entered under the contract and paid a part of the purchase money before the arrangement with the defendant, who took the conveyance directly from the original vendor. But the principle of the case is decisive of this appeal. That the (603) contract was in writing, and the vendee had made partial payment of the purchase money, and was in possession of the premises, only make the two cases to differ, circumstantially, and affect the degree rather than the character of the evidence to establish the relationship of mortgagor and mortgagee. The purchase here was by the borrower of the money from the plaintiff, and his rights as purchaser were recognized by the seller; the possession of the actual buyer followed immediately upon the purchase, and he paid a part of the purchase money at the time, and became a debtor to the plaintiff for the amount advanced by him. The circumstances are as significant and the equities as palpable as in Stoddardv. Whiting; and it needs no extension of the rule there adjudged to declare the conveyance to the plaintiff to have been intended as a mortgage."
That case is not distinguishable in principle from this one. It appeared there, it is true, that the seller had recognized the borrower of the money as the purchaser of the land by receiving a part of the purchase money from him, but that fact does not differentiate the cases, and was merely mentioned by the court because it happened to be one of the facts in the case. Sandlin bought for Kearney, paying the price for him, *Page 476 
and thereby recognized him as the real purchaser. The character of the transaction must be determined, not so much by the understanding of Davis, the seller, as by the agreement between Sandlin and Kearney. Many authorities can be cited to sustain our view of the matter. 20 A. E. Enc., p. 943 et seq. and notes; Jones on Mortgages (6 Ed.), secs. 281 and 332; Klock v. Walter, 70 Ill. 416; Robinson v. Lincoln SavingsBank, 85 Tenn. 363; Thacker v. Morris, 52 W. Va. 220
(94 Am. St., 928). We are not without analogous decisions of this Court. The case of Crudup v. Thomas, 126 N.C. 333, is substantially like ours. There E. A. Crudup advanced the money at the request of A. D. Crudup and bought the land at a sale, taking the deed to himself. It was held that he was a mortgagee and liable to account as such. Mfg. Co. v. Gray, 124 N.C. 322. In Watkins v. Williams, 123 N.C. 170, it (604) was held that whenever a deed is really taken as a security for a debt, it is substantially a mortgage, whatever may be the formal agreement between the parties, and, in equity, it will be treated as a mortgage, with all the rights and remedies incident thereto; and the same principle was announced in the previous case of Robinson v. Willoughby,65 N.C. 520, wherein Justice Rodman, speaking for the Court, said: "A mortgage is a conveyance by a debtor to his creditor, or to some one in trust for him, as a security for the debt. Whatever it is, substantially, this is held to be a mortgage in a court of equity, and the debtor has a right to redeem. Coote Mort., 22; Fisher Mort., 68. It is immaterial whether the contract be in one writing or in several; Masonv. Hearne, 45 N.C. 88; and it is also immaterial (as between the parties) whether the agreement for redemption be in writing or oral; and such agreement may be implied from the attending circumstances. Of these principles, and of the circumstances which will cause a deed absolute on its face to be construed as a mortgage, numerous illustrations may be found in the treatises above cited, and in our own Reports. . . . In determining the question whether a transaction amounted to a mortgage, or to a defeasible purchase, it has always been considered of the greatest importance whether the vendor was a debtor to the vendee, and if he were, and if after the supposed sale he continued to be a debtor, the inference was irresistible that the transaction was a mortgage, and that he could redeem by paying the debt. (Coote Mort., 24.) Otherwise, the debtor would have parted with his land without any consideration whatever. . . . If a transaction be a mortgage in substance, the most solemn engagement to the contrary, made at the time, can not deprive the debtor of his right to redeem; such a case being, on grounds of equity, an exception to the maxim `Modus et conventio vincunt legem.' . . . In addition to this, the fact that the supposed vendor continued in possession after the sale, without the demand or payment of rent, is a circumstance *Page 477 
which, remaining unexplained, is inconsistent with the idea of an absolute sale. Taking this view of the case, Christenbury retained an equity of redemption, which at least his deed conveyed to Willoughby."Porter v. White, 128 N.C. 42; Waters v. Crabtree, (605)105 N.C. 394. A comparison of these decisions, and others of the same class, with the case at bar will disclose a striking similarity between them. But Mason v. Hearne, 45 N.C. 88, seems to be "on all fours" with our case, the only difference being that, though the deed was absolute in form, the agreement for redemption was in writing; but this, as we have seen, makes no difference. In that case it appeared that the defendant bought a tract of land for the plaintiff from one Davis, and paid the purchase money to him, under an agreement that he would convey the land to the plaintiff when she paid the amount so advanced by him. It was held to be a mortgage, Judge Pearson saying that "the Court regards not the form, whenever the real intention was merely to secure the payment of money, and will, upon the ground of the intention, relieve against the forfeiture of conditions" and permit the party having the equity to redeem. Our case shows not only an express agreement for a redemption, which was evidently omitted from ignorance or mistake, but facts dehors the deed inconsistent with the idea of an absolute purchase by Sandlin, and thus it is brought within the familiar principle established in the following decisions: Streator v. Jones, 10 N.C. 423;Kelly v. Bryan, 41 N.C. 283; Clement v. Clement, 54 N.C. 184;Sowellv. Barrett, 45 N.C. 50.
We close this part of the discussion with the words of Chief JusticeSmith in the oft-cited case of Mulholland v. York, 82 N.C. 510: "Can a trust attaching to land be created by a parol contract entered into between the debtor and his attorney, that the latter will buy the debtor's land at the execution sale, hold for his benefit, and reconvey on being reimbursed the money paid for it? In our opinion, a trust may be thus formed, and it will be enforced on the ground of fraud in the purchaser in obtaining the property of another under a promise to allow him to redeem, and attempting afterwards to appropriate it to his own use. The principle is illustrated in several cases in our own Reports, which will be briefly adverted to. In Turner v. King, 37 N.C. 132, the defendant verbally agreed with the plaintiff to buy in his lands, about to be sold under execution, and allow him to redeem on repayment of (606) the purchase money; and this being known to the bidders, two of them desisted, and the defendant bought for $190 lands worth $450. On a bill to redeem, Daniel, J., uses this language: "The attempt of the defendant to set up an irredeemable title, after the agreement he entered into, is such a fraud as this Court will relieve against.'" The learned *Page 478 
jurist used the word "trust" in its general sense, as every mortgagee is a trustee, first for himself to secure his debt, and then for the mortgagor.
If this deed must be considered as a mortgage, the deed for the town lot must receive the same construction. Kearney actually bought the lot himself and paid a part of the purchase money, Sandlin advancing the balance, upon an agreement of Kearney to pay it back to him. This created a debt, and the deed was a security for its payment.
Having concluded that both deeds must be regarded as mortgages, it follows that the plaintiff's cause of action is barred by the statute, Kearney, the mortgagor, having been in possession of the Davis tract since the last payment on the debt was made in January, 1885 (Revisal, secs. 391 (3) and 399), and the defendant's cause of action, alleged in his counterclaim, is likewise barred, Sandlin, the mortgagee, having held the possession of the lot since January, 1885, when the last payment on that debt was made. Brown v. Brown, 103 Ind. 23.
The result is that there was error in the ruling as to the Davis tract, and no error as to the town lot, and we modify the judgment accordingly and direct it to be adjudged in the Superior Court that the defendant is the absolute owner of the Davis tract and the plaintiff of the town lot.
Modified.
(607)