IN RE WILL OF LETILLA M. EDENS.

(Filed 9 November, 1921.)

**1. Appeal and Error—Evidence—Questions and Answers.**

Exceptions to the exclusion of questions from the evidence must show what the contemplated answers would have been, or what the appellant expected to prove, so that the Supreme Court may pass upon their materiality or relevancy, or they will not be considered on appeal.

**2. Appeal and Error—Harmless Error—Prejudice.**

Error committed in the Superior Court must appear on appeal to have been material and prejudicial to the appellant, amounting to a denial of a substantial right, and a new trial will not be granted for mere error otherwise.

**3. Appeal and Error—Opinions—Case Presented.**

Opinions of the Supreme Court must be understood in connection with the case peresented there on appeal.

**4. Wills—Evidence—Witness to Will.**

The importance attached by the law to the testimony of a subscribing witness to a will, and their duty to observe the condition of the testator and to prevent fraud, is confined to the time of their attestation of the will, and their observation at other times, especially at a subsequent date, has only the force of that of other witnesses who may testify thereto.

**5. Same—Instructions.**

Where the subscribing witnesses to a will have not only testified as to the mental condition of the testator at the time, but have also testified to their observations at other times, a request for instruction that places all of this testimony upon the same probative footing as to the weight to be attached to the testimony of witnesses of the law, is erroneous and properly refused.

**6. Appeal and Error—Objections and Exceptions—Harmless Error.**

The appellant may not successfully complain for error of the admission of the testimony of the appellee's witness, when it lends color to his own contentions.

**7. Appeal and Error—Misconduct of Juror—Supreme Court—Motions— New Trials.**

The alleged misconduct of a juror, discovered after the trial, and upon which a motion for a new trial is made in the Supreme Court, is *held*, upon the examinations of the affidavits filed on this appeal, to be insufficient.

APPEAL by caveators from *Daniels, J.,* at May Term, 1921, of ROBESON.

Issue of *devisavit vel non* raised by a caveat to the will of Letilla M. Edens. Alleged mental incapacity and undue influence are the grounds upon which the caveat is based.

In re Edens.

Allen Edens, a bachelor, and his maiden sister, Letilla M. Edens, whose will is the subject of this controversy, owned as tenants in common a valuable farm situated in Robeson County, upon which they lived and worked together for quite a number of years. From time to time they took into their home some young men to act as overseer of their farming interests. W. W. Rowland was employed in this capacity for many years, then Alton McGirt, and finally John C. Crawford, one of the propounders, who came to them when quite a young man and remained with them until they died.

Allen and Letilla Edens had but one living brother, Frank Edens, who likewise was never married. They also had two sets of nieces and nephews, children of two deceased brothers, and these nieces and nephews are the caveators in this action.

The record is replete with evidence tending to show an estrangement between the testatrix and her relatives from the time of the death of her brother, Allen Edens, in 1917, until her own death in 1919. There is also evidence of John C. Crawford, one of the beneficiaries, having ingratiated himself in her favor and acting somewhat in the capacity of a confidential adviser in relation to her business affairs. And, further, there is evidence appearing on the record tending to show that, prior to the making of her will, the testatrix became so embittered and allowed her prejudices to become so aroused that at times she would work herself into a frenzy, fly into a violent rage, and abuse her relatives, calling them "knaves, robbers, thieves, kings, kaisers, and the celebrated heirs and gang." She was seventy-one years of age at the time of her death, and she left a considerable estate.

Mrs. Ward testified: "She was an unusually good conversationalist, very intelligent until the last few years of her life. I began to notice a change in her habits decidedly in 1915. From then on the change in her condition grew worse."

There was a strain of hereditary insanity in the family of the testatrix.

Under the will the old Edens home place was devised to John C. Crawford, a stranger in blood, and this is urged as evidence of an unnatural mind.

There was much evidence, pro and con, on the question of mental capacity, and some evidence on the issue of undue influence; but, upon these controverted matters, the jury's answer established the validity of the will.

From a verdict and judgment in favor of the propounders, the caveators appealed.

In re Edens.

*Johnson & Johnson, McNeill & Hackett, Sinclair, Dye & Clark, and McLean, Varser, McLean & Stacy for caveators.*

*C. W. Tillett, Stephen McIntyre, G. B. Patterson, and Britt & Britt for propounders.*

STACY, J. There are a number of exceptions appearing on the record relating to the admission and exclusion of evidence, but none apparently raises any new question of law which would seem to merit an extended discussion. In several instances it does not appear what answer the witness would have made to the excluded question, nor what the caveators proposed to prove by the evidence which they wanted to offer. Therefore, as we cannot determine what bearing these rulings may have had upon the result, the exceptions must be overruled. *Armfield v. R. R.,* 162 N. C., 24; *Fulwood v. Fulwood,* 161 N. C., 601; *Dickerson v. Dail,* 159 N. C., 541, and numerous cases to like import. The other evidentiary exceptions, or those relating to the court's rulings on questions of proof, are not sufficiently meritorious to warrant a reversal or new trial. Verdicts and judgments are not to be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling was erroneous, but that it was material and prejudicial, amounting to a denial of some substantial right. *Cotton Mills v. Hosiery Mills,* 181 N. C., 33; *Burris v. Litaker,* 181 N. C., 376; *S. v. Smith,* 164 N. C., 476; and *Cauble v. Express Co.,* at the present term.

In apt time, and in due form, the caveators requested his Honor to give the following special instruction:

"The court charges you that you may attach, because the law attaches, such importance to the testimony of the subscribing witnesses to the will, for that they are known as the witnesses of the law, and the law requires them, not only for the purpose of witnessing the signature of the instrument as to form, and requires them to take certain precautions as to signing in each other's presence and in the presence of the testator, and that they see the testator sign, to protect against fraud, but they are required especially to see that the testator is of sound and disposing mind and memory, and is of such mind and memory at the precise point of time when the papers are executed, and that in passing upon the testimony of the witnesses to the will you may observe this rule and consider their testimony in the light of the duty which the law casts upon them with reference to her mental capacity in executing the will."

It is stated that this prayer was taken from the opinion of this Court in the case of *Cornelius v. Cornelius,* 52 N. C., 593, and the caveators contend that his Honor's refusal to give it should be held for reversible

error.  *Marshall, C. J.*, in *U. S. v. Burr,* 4 Cranch, 470, says:  "Every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered."

The facts of the two cases thus presented for comparison are quite different.  In *Cornelius v. Cornelius* the testator had been badly wounded some two weeks before he made his will.  Having grown worse from his injury, he sent for a physician and the two subscribing witnesses.  At the request of the testator, the doctor prepared his will, and the witnesses duly attested it.  Upon the question of mental capacity—it being alleged that the testator was in extremis when his will was signed—the witnesses testified in detail as to what occurred, and the observations they made of the testator's condition, at the time of declaration and publication. Under these circumstances it was clear that the subscribing witnesses were in a better position to know the mental condition of the testator at the precise time in question than any one else, and their testimony related only to his condition at that particular time.  In the case at bar, however, the subscribing witnesses not only testified as to the mental condition of the testatrix at the time of the execution of her will, but they were also examined about other matters and things, which existed and transpired at other times and places, before and after the date of attestation.

The law charges a subscribing witness with the duty of observing the condition of the testator at the time his will is executed and to see that no wrong is committed, but as to what may transpire at some other time and place, especially at a subsequent date, when the witness is under no special duty to observe the testator, the law would attach no peculiar importance to his testimony in regard to these matters, simply because he was a subscribing witness to the will.  Attesting witnesses are witnesses of the law in regard to matters occurring at the time of attestation.  They are therefore charged with the duty of observing the attendant circumstances and conditions surrounding the making of a will, but we apprehend they stand on the same footing with other witnesses when they undertake to speak of matters not coming within the scope of their knowledge and observation as such witnesses.

As the prayer of the caveators is general in its terms, and not confined to that part of the testimony of the subscribing witnesses which related only to what transpired when they were charged with this special duty, we think his Honor's refusal to give it, as requested, should not be held for reversible error.  On the other hand, if the prayer, by correct interpretation was intended to apply to the testimony of the subscribing witnesses only when they were charged with this special duty as witnesses of the law, still we think the caveators are not in position to complain, because the evidence of these witnesses, in this particular, was

26—182

favorable to the propounders. It was only when they spoke of other matters that their testimony seemed to lend color to the contentions of the caveators.

The remaining exceptions are without special merit; and, upon a perusal of the entire case, we conclude that the judgment on the verdict in favor of the propounders must be upheld.

No error.

PER CURIAM. There was a motion for a new trial filed in this cause, upon the ground of the alleged misconduct of a juror. Caveators aver that the information, concerning the instant matter, came to their attention after the adjournment of the term of court at which the case was tried, and after the same had been docketed here. Upon an examination of the affidavits, filed by both sides in regard to the present motion, we are of opinion that it must be overruled, and it is therefore disallowed.