## L. B. PERRY v. SOUTHERN SURETY COMPANY.

(Filed 14 October, 1925.)

**1. Equity—Deeds and Conveyances—Reformation—Evidence.**

> Equity will not reform a deed into a mortgage for mistake upon evidence tending only to show that after considering the matter, the parties intended the instrument to be a deed, as it was finally written.

**2. Same—Principal and Surety—Contracts.**

> Where the surety on a contractor's bond and the contractor have agreed that the contractor will save the surety harmless on account of any default under his contract with whatever property he may have in the way of tools, appliances and materials on hand, and thereafter under a separate agreement expressly referring to the original surety contract, the contractor conveys certain of his realty encumbered by a mortgage, the transactions will be construed together in their entirety to effectuate the intent of the parties, and accordingly the deed will be given effect as a mortgage security under the original contract of surety, and not an absolute conveyance.

### 3. Appeal and Error—Burden of Proof—Harmless Error.

> ·On appeal to the Supreme Court, the burden is on the appellant not only to show error, but that it was prejudicial; and where there has been error committed in the court below, a reversal will not be had when upon the record it properly appears that a correct result has been reached, as a conclusion of law.

APPEAL by plaintiff from PASQUOTANK Superior Court. *Cranmer, J.*

Action by plaintiff to recover on a contract by defendant to complete plaintiff's building contract with Board of Graded School Trustees of Elizabeth City. From a judgment in favor of defendant, upon a jury verdict, the plaintiff appealed. Affirmed.

The plaintiff contended that he had a contract to build two school buildings for the Board of Trustees of Elizabeth City, and that on or about 1 July, 1922, he gave, with defendant as surety, a bond to "save said board harmless as to plaintiff's due and proper execution of said work"; that in August, 1923, he was in need of financial assistance to complete the high school building, and made application to the trustees to reduce the amount of the compensation agreed to be retained until the completion of the contract, to 10 per cent, with defendant's consent; but the trustees refused, for that they did not have the money on hand to make the desired advances. The plaintiff and defendant agreed, 11 September, 1923: (a) that plaintiff transfer and assign and set over to defendant all unpaid balances on building contract; (b) that plaintiff remain in charge of the construction work until completion of contract, without further charge for his services; (c) that plaintiff convey to defendant the Wineke Apartment property in Elizabeth City; (d) that plaintiff pay by his personal note $6,000 on specified claims already due; (e) that defendant pay all other labor and material accounts now due, as per statement, and all labor and material accounts accruing thereafter in the completion of the buildings; (f) that defendant is to keep in a named bank in Elizabeth City funds sufficient to pay for labor and material to complete the buildings, same to be deposited in the name of plaintiff trustee, and checks to be countersigned by defendant's attorney in fact, and checks to be issued on deposited fund for statements approved by plaintiff, who, by such approval, guarantees correctness; (g) that, at conclusion of contract for construction of buildings, the defendant render itemized statement to plaintiff for all disbursements, including attorney's fees; that the defendant furnished funds for material and work on buildings to the extent of $33,000, but wrongfully refused to continue to carry out the September contract, and did not pay the accounts agreed on, and damaged the plaintiff to the extent of the unperformed contract and caused his credit and business reputation to suffer damages in a large sum.

The defendant contended that, in July, 1922, its relations with plaintiff were fixed when it accepted the written application of plaintiff, and, upon it, executed his bond as surety, and that the subsequent agreement was pursuant to this relation, and that they advanced funds and took a deed for the Wineke Apartment property, and the assignment of the unpaid balance of the contract price, because of the duty of plaintiff to secure it, and finally to save defendant harmless on account of the suretyship, and denied plaintiff's contentions.

The application executed and admitted by plaintiff, contains among others, the following covenants:

"Second: That we, the undersigned, will at all times indemnify and keep indemnified the company, and hold and save it harmless from and against any and all liability, damages, loss, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, which the company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond herein applied for, or by reason or in consequence of the execution by the company of any and all other bonds executed for us at our instance and request, and that we will pay over, reimburse and make good to the company, its successors and assigns, all sums and amounts of money which the company or its representatives shall pay or cause to be paid or become liable to pay, on account of the execution of any such instrument, and on account of any liability, damage, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, which the company may pay, or become liable to pay by reason of the execution of any such instrument, or in connection with any litigation, investigation, or other matter connected therewith, such payment to be made to the company as soon as it shall have become liable therefor, whether the company shall have paid out said sum or any part thereof or not.

"Seventh: That these covenants and also all collateral security, if any, at any time deposited with the company concerning the said bond, or any other, former or subsequent bonds executed for us or at our instance, shall, at the option of the company be available in its behalf and for its benefit as well concerning the bond or undertaking hereby applied for, as also concerning all other former or subsequent bonds and undertakings executed for us or for others at our request.

"Eighth: That our execution of any other instrument, whether relative to the bond hereby applied for or to any other, former or subsequent bonds executed for us or at our request, shall not release us from liability under the foregoing covenants, unless such other instruments shall expressly stipulate that we shall be released from such liability.

"Eleventh: That the suretyship is for the special benefit of the indemnitor, its property, income and earnings now owned or hereafter acquired, to which the company looks for its indemnity, and the indemnitors represent that it is specifically and beneficially interested therein.

"Twelfth: That the company shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from its suretyship, and should it make payment hereunder, shall have every right and remedy of the undersigned for the recovery of same."

It is also covenanted that the defendant may have access to all books and papers, including deposit accounts, and that "these covenants shall be binding not only upon us jointly and severally, but as well upon our heirs, executors, administrators, successors and assigns."

The verdict is as follows:

"1. Did the plaintiff, Perry, and the defendant, Southern Surety Company, make and enter into that certain agreement of 11 September, 1923, a copy of which is attached to the complaint, as alleged in the complaint? Answer: Yes.

"2. If so, was a provision requiring the plaintiff, Perry, to repay the defendant company all such amounts as said company should pay out under the terms of said agreement, omitted therefrom by the mutual mistake of the parties, the inadvertence of said parties, or the draftsman (or the mistake of the defendant company, induced by the fraud of the plaintiff, Perry, as alleged in the answer)? Answer: Yes.

"3. Was said Perry ready, able and willing to perform said contract as alleged in the complaint? Answer: Yes.

"4. If so, was a provision permitting said Perry to redeem said property, upon the payment to defendant company of all amounts paid out by them under said agreement, omitted from said deed by the mutual mistake of the parties, or the inadventence of said parties or the draftsman (or the mistake of the defendant company, induced by the fraud of the plaintiff, Perry, as alleged in the answer)? Answer: Yes.

"5. Did the defendant company wrongfully breach said contract, as alleged in the complaint? Answer: No.

"6. What general damages, if any, is the plaintiff, Perry, entitled to recover of the defendant company? Answer: None.

"7. What sum, if any, is the defendant company entitled to recover of the plaintiff, Perry? Answer: $15,000."

The judgment provides:

"That plaintiff take nothing by his cause of action set up in the complaint; that the contract and agreement and deed between the plain-

tiff and defendant be and the same are hereby reformed in accordance with the findings of the jury as above set out and the allegations of the answer.

"That the cause be and the same is hereby referred to E. L. Sawyer as referee, who will hear the evidence and state an account between the parties and ascertain the true amount due by plaintiff to defendant for advances made pursuant to said contract and agreement so reformed as prayed for in the answer, and who will make report to the next term of Superior Court in said county of the amount so found by him to be due by way of accounting from plaintiff to defendant, which sum so found shall be and constitute a lien against the premises known as the Wineke Apartment described in the pleadings in this cause, and also against the balance of funds on deposit in trustee's account referred to in said pleadings and also against the remainder of the funds on deposit in the office of the clerk of the Superior Court.

"That upon payment of said sum so ascertained upon said accounting to be due by plaintiff to defendant the said lien shall be discharged, and that upon failure of plaintiff to pay off and discharge the same, within 30 days from confirmation of said account by the court, said balance in trustee's account and said balance of funds in the clerk's hands shall be applied toward the satisfaction of said claim, and the balance of said indebtedness, if any, may be enforced by advertisement and sale of the premises known as the Wineke Apartment after advertisement as provided by law for and in the case of mortgages and deeds of trust, said sale to be made by the clerk of this court as commissioner of this court, who will be allowed 2 per cent commission not to exceed $250 for his services in advertising and conducting said sale, to be deducted from the proceeds along with the costs of advertising and sale, and who will apply the remainder of said proceeds as far as may be necessary to the discharge and satisfaction of the balance so found to be due to defendant as above set forth and pay over the surplus, if any, after so discharging the remainder of said indebtedness to the said L. B. Perry or his assigns.

The plaintiff appealed, assigning errors in the admission and rejection of evidence in the charge as to mistake, inadvertence and fraud, and in its refusal to grant plaintiff's motion to dismiss defendant's cross-action.

*Aydlett & Simpson, McMullan & LeRoy for plaintiff.*
*W. L. Small, Ehringhaus & Hall for defendant.*

VARSER, J. The defendant is not entitled to reform the contract and the deed for the Wineke Apartment property on the evidence. There is no evidence to support either the allegations of mutual mis-

take, inadvertence, or fraud. The defendant's witness, Butler, testified that he read the contract of 11 September, 1923; that a mortgage on the Wineke Apartment property was discussed, but a deed was finally written and recorded. The parties knew the contents of the contract and deed. Nothing was done to prevent a full understanding. Parties are required to exercise ordinary diligence in executing contracts, and they are fixed with all knowledge that diligence would have disclosed. *School Committee v. Kesler,* 67 N. C., 448; *Floars v. Ins. Co.,* 144 N. C., 241; *Dellinger v. Gillespie,* 118 N. C., 739; *Newbern v. Newbern,* 178 N. C., 4; *Griffin v. Lumber Co.,* 140 N. C., 520; *Harvester Co. v. Carter,* 173 N. C., 229; *Colt v. Kimball, ante,* 169.

It is also settled, in this jurisdiction, now, that a deed absolute upon its face cannot be converted into a mortgage unless it shall be established that the clause of defeasance was omitted by ignorance, mistake, fraud, or undue influence. *Chilton v. Smith,* 180 N. C., 472; *Gaylord v. Gaylord,* 150 N. C., 222; *Williamson v. Rabon,* 177 N. C., 304. This latter case overrules *Fuller v. Jenkins,* 130 N. C., 554. It is well settled that parol trusts cannot arise between the parties to a deed. *Gaylord v. Gaylord, supra; Bonham v. Craig,* 80 N. C., 224; *Newton v. Clark,* 174 N. C., 394; *Newbern v. Newbern, supra.*

These holdings do not, however, affect the main question in the case at bar.

The defendant contends that the contract of 1 July, 1922 (which consists of the plaintiff's application for bond accepted by defendant, and the indemnity bond to secure the owner of the buildings against the plaintiff's default in his building contract), creates such a relation between plaintiff and defendant that all subsequent transactions are, as a matter of law, a security. The defendant on 1 July, 1922, solemnly covenanted with defendant that his execution of "any other instrument, whether relative to the bond hereby applied for, or to any other, former or subsequent bonds executed for us, or at our request, shall not release us from liability under the foregoing covenants, unless such other instrument shall expressly stipulate that we shall be released from such liability." These "foregoing covenants" undertake, with much particularity, to provide for a continuing obligation to save the defendant harmless on account of its suretyship and it assigns all rights of plaintiff in "all tools, plant equipment and materials of every nature and description" that plaintiff may have, for use in and about the work, both on hand, in storage, or in transportation, as well as an assignment of all moneys "due or to become due," as provided in the building contract, with full power of attorney to execute all necessary papers to accomplish the desired result, to wit, the complete indemnity of defendant from loss.

The agreement of 11 September, 1923, on which plaintiff bases his action, refers to the transactions of 1 July, 1922, and the plaintiff's present need of financial assistance "for the purpose of completing the buildings" as contracted for, "which finances the Southern Surety Company has agreed to supply," as therein set out, and recites that the said Perry is desirous of saving said Southern Surety Company harmless, and does not stipulate that plaintiff is released from the liability on his covenants in the application for bond.

The consideration is thus recited: "In consideration of the mutual benefits to be derived." The conveyance of the Wineke Apartment property is one of the things to be done by plaintiff in consideration of the recited desire to save the defendant harmless, and the stipulation provides that it shall be conveyed by "proper deed."

There is no legal obstacle presented by the encumbrance on the Wineke Apartment property. The assumption of, and payment of this mortgage, by defendant, is only another item in the final accounting. *Veeder v. Veeder,* 141 Iowa, 492; *Dunton v. McCook,* 93 Iowa, 258.

We are minded to hold that, upon the contract of 1 July, 1922, and the agreement of 11 September, 1923, and the deed to defendant for the Wineke Apartment property, on same date, which deed is an express part of this agreement, that the whole transaction constitutes itself into that of "advancement and security," and debtor and creditor. The same rule that prevents defendant in its effort to reform the contract and deed of 11 September, 1923, holds the plaintiff to the performance of the covenants of 1 July, 1922.

Whenever a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is, in equity, a mortgage. *Hames v. Williams,* 92 Maine, 483; L. R. A., 1916 B, 55 note, even if on its face, it may be a deed. *Edrington v. Harper,* 26 Ky., 353.

There are no special words required to constitute a mortgage. The test is whether the conveyance, or the whole transaction, is a security for the payment of money, or the performance of any act or thing. *Sandlin v. Kearney,* 154 N. C., 596; 37 L. R. A. (N. S.), 525, note; L. R. A., 1916 B, 144, note, 287, note.

In *Sandlin v. Kearney, supra,* the material facts were admitted in the pleadings, and in the case at bar, the admitted written instruments show the intention to create a security. The three written instruments, though executed on two different dates, are so linked together by express references and evident intention, that it is conclusive that they constitute only one transaction. 19 R. C. L., 244, sec. 7, 246 sec. 9; *Wilcox v. Morris,* 5 N. C., 116. The conveyance was intended to indemnify the

grantee, the defendant, for the assumption of some outstanding obligations of the plaintiff related to the subject-matter of the original contract. Therefore, it is security. *Watkins v. Williams,* 123 N. C., 170; *Robinson v. Willoughby,* 65 N. C., 520; *Noland v. Osborne,* 177 N. C., 14; *Russell v. Southard,* 13 L. Ed. (U. S.), 927. The recitals in the agreement of 11 September, 1923, have the same effect, *inter partes,* as recitals in the deed itself. A deed which recites that it is security for a debt is a mortgage. Devlin on Real Estate (3 ed.) Vol. 2, sec. 1125; *Wilson v. Fisher,* 148 N. C., 535.

Equity will, in doubtful cases, construe the transaction to be a security and not a sale, because this subserves the ends of justice and prevents imposition. If the idea of security appears with reasonable distinctness by the writings and no evil practice or mistake appear, courts will incline so to regard it, because the general rule which favors written evidence concurs with the reasons of justice. *Cornell v. Hall,* 22 Mich., 377; *Honore v. Hutchings,* 71 Ky., 687. When two or more papers are executed by the same parties at the same time, or at different times, and show on their face that each was executed to carry out the common intent, they should be construed together. *Chicago Auditorium Assn. v. Corporation of Fine Arts Bldg.,* 244 Ill., 532; 18 Ann. Cas., 253; *Canadian Coal Co. v. Lynch,* 115 Pac., 466; *Brake v. Blain,* 153 Pac., 158; *Longfellow v. Huffman,* 57 Org., 338, 112 Pac., 8; *Parker v. Supply Co.,* 186 Pa. St., 294, 40 Atlantic, 518.

It is proper, in the interpretation of a written contract, to consider all the attendant circumstances, the relation of the parties, and the object it had in view. *Bank v. Redwine,* 171 N. C., 559; *McMahan v. R. R.,* 170 N. C., 456; *Simmons v. Groom,* 167 N. C., 271; *Neal v. Ferry Co.,* 166 N. C., 563; *Slocumb v. R. R.,* 165 N. C., 338; *Hornthal v. Howcott,* 154 N. C., 228; *Hardy v. Ward,* 150 N. C., 385; *Fowle v. Kerchner,* 87 N. C., 49.

Regarding these rules and construing the application executed by plaintiff to the defendant 1 July, 1922, and the agreement of 11 September, 1923, and the Wineke Apartment deed together, and being fully conscious of the common intent of the parties, we hold that the dealings between the plaintiff and the defendant, thus evidenced, constitute an advancement on the part of the defendant, and a security therefor on the part of the plaintiff. *Bunn v. Braswell,* 139 N. C., 135; *Watkins v. Williams, supra; Robinson v. Willoughby,* 65 N. C., 520; *Sandlin v. Kearney, supra; Mason v. Hearne,* 45 N. C., 88; *Cheek v. B. & L. Association,* 126 N. C., 244; *Lutz v. Hoyle,* 167 N. C., 632; *Ray v. Patterson,* 170 N. C., 228; citing *Robinson v. Willoughby, supra; Mason v. Hearne, supra; Porter v. White,* 128 N. C., 44. This latter

case is an apt illustration of the instant case; the doctrine of reformation was denied, but, construing the papers together, the same result was reached.

Our ruling approves the judgment rendered by the court below, and if its rulings challenged by plaintiff's exceptions are erroneous, and its judgment is correct, it will not be disturbed.

We do not presume prejudicial error and the burden is upon the appellant to show, not only error, but that it is prejudicial. The judgment will be affirmed if, upon the entire record, no substantial right to the appellant has been denied, and, even if irregular, when the correct result has been accomplished. The appellant is not, upon any view of the record, entitled to recover. *Blevins v. R. R.,* 184 N. C., 324; *Quelch v. Futch,* 175 N. C., 694; *Mercer v. Lumber Co.,* 173 N. C., 49; *Oil Co. v. Burney,* 174 N. C., 382; *In re Will of Edens,* 182 N. C., 398; *Rankin v. Oates,* 183 N. C., 517; *Lindsey v. Bank,* 115 N. C., 553; *Ewbank v. Lyman,* 170 N. C., 505; *Butts v. Screws,* 95 N. C., 215; *Cherry v. Canal Co.,* 140 N. C., 422; *Shackelford v. Staton,* 117 N. C., 73; *Rierson v. Iron Co.,* 184 N. C., 363.

The right result having been reached in the court below, we conclude that there is

No error.