On or about 13 July, 1933, the defendant purchased from the Carolina Feed and Machinery Company of Greensboro one Case T. E. 45 H.P. Skid Motor, for the sum of $900.00. This motor was to be used by the defendant in his ice plant in Randolph County. He paid $600.00 in cash and executed a note for $300.00 for the balance of the purchase money. The note for said sum of $300.00 was dated 13 July, 1933, and was due on or before 12 August, 1933. The payee in the note was the Carolina Feed and Machinery Company, which corporation was a dealer in Case machinery. The said note was an ordinary promissory note, but contained the following stipulation: "The transfer of this note shall *Page 760 
operate to pass title to the property described in a conditional sales contract between the parties of even date herewith to secure the payment of this note." At the time of executing the note the defendant also executed a conditional sales contract. This conditional sales contract specified that $600.00 was to be paid cash on delivery of the motor and the balance of the purchase money, amounting to $300.00, was to be evidenced by a note for $300.00, due 12 August, 1933. The said conditional sales contract contained the following warranty: "J. I. Case Company warrants each Case product (excepting attachments, devices, or equipment not made by it, which may be warranted by their respective makers but are not warranted by the company) to be well made, of good material, durable with good care, and, if properly set up, adjusted, and operated by competent persons, to be capable, under ordinary conditions, of doing the work for which it is designed." There was further stipulation in the contract to the effect that if the purchaser operated any Case product for two days, and such machinery "shall fail to fulfill such warranty, written notice thereof shall be given at once to the dealer from or through whom the same was purchased. If the dealer does not remedy the defect within two days after notification, then immediate written notice of the defect, particularly describing the same, specifying the time of discovery thereof and the time of notification to the dealer, shall be given by registered letter to J. I. Case Company. . . . If, after such notice and opportunity to remedy the difficulty, J. I. Case Company fails to make the product fulfill the warranty, the part that fails shall be returned immediately by the purchaser, free of charge, to the place from whence it was received, and J. I. Case Company notified thereof at its branch house aforesaid, whereupon J. I. Case Company shall have the option to furnish another machine, implement, or part in place of the one so returned, which shall fulfill the warranty, or to cause to be returned the money and notes or proportionate part thereof received for such machine, implement, or part, and no further claim shall be made. . . . J. I. Case Company's liability for any breach of this warranty is limited to the return of cash or notes actually received by it on account of the purchase price of said implement, machine, part, or attachment."
On 15 August, 1933, the plaintiff instituted suit against the defendant on the note to recover the sum of $300.00. The defendant admitted the execution of the note and set up a counterclaim for damages in the sum of $600.00 for breach of the warranty, alleging that when the machine was delivered to him at his ice plant it was defective, wasteful in operation, and was not capable under ordinary conditions of "doing the work for which it is designed."
At the trial the plaintiff offered the note in evidence, and rested. *Page 761 
Thereupon the defendant offered various witnesses who testified generally that the machine had an oil leak, resulting in fuel waste; that the rings and pistons were defective, and that the engine was out of balance and did not run true, and that as a result of these defects the engine was wholly worthless and had no value at all. There was further evidence offered by the defendant that on 28 July, 1933, he notified the plaintiff at its office in Atlanta, Georgia, calling attention to the fact that the engine was "entirely unsatisfactory. It has given trouble from the start and has not been as warranted." There was evidence that no reply was received to this notice, and that thereafter, on 12 August, 1933, the defendant again notified the plaintiff by letter at its office in Racine, Wisconsin, that "this engine is absolutely unsatisfactory and does not come up to the warranty and Mr. Cox is now forced to use the old tractor he formerly used. Unless this engine is made satisfactory within ten days we are going to be forced to go into court and sue for the recovery of the amount paid and the cancellation of the note you hold and for the damages growing out of your breach of warranty," etc.
On 16 August, 1933, the plaintiff replied to the letter of 12 August, stating, "We see no reason why this Skid motor should not give satisfaction if properly operated. There are thousands of them in use in the hands of satisfied customers. You may no doubt expect to hear from our Atlanta branch within the next few days."
There was testimony to the effect that various mechanics had worked upon the machine and were unable to repair it.
The following issues were submitted to the jury:
1. "Did the plaintiff warrant the engine to be well made, of good material, durable with good care, and, if properly set up, adjusted, and operated by a competent person, to be capable, under ordinary conditions, of doing the work for which it is designed?"
2. "Did the plaintiff breach said warranty?"
3. "What amount, if any, is the plaintiff entitled to recover of the defendant?"
4. "What amount, if any, is the defendant entitled to recover of the plaintiff on his counterclaim?"
The jury answered the first issue "Yes"; the second issue "Yes"; the third issue "Nothing"; and the fourth issue "$600.00."
From judgment upon the verdict the plaintiff appealed.
The note upon which the plaintiff brought suit was executed by the defendant and payable to the Carolina Feed and *Page 762 
Machinery Company of Greensboro, North Carolina. This corporation was a dealer engaged in the sale of machinery manufactured by the plaintiff J. I. Case Company. Hence, the plaintiff was the manufacturer.
The paramount question presented is whether there was sufficient evidence of an express warranty made by the plaintiff.
The plaintiff brought suit upon a note which upon its face declared that "the transfer of this note shall operate to pass title to the property described in the conditional sales contract between the parties of even date herewith," etc. The sales contract of even date referred to the note of $300.00, and contained express warranties disclosed by the record. Indeed, Mr. Smithey, a witness for the plaintiff, said: "I had the blank contract there that the Case Company uses. It is a Case contract. They furnish them for engines." It is manifest, therefore, that the note and the conditional sales contract containing the express warranty were not only contemporaneous writings, but in fact component parts of one completed transaction. The applicable principle of law was stated in Perry v. SuretyCompany, 190 N.C. 284, 129 S.E. 721, in these words: "When two or more papers are executed by the same parties at the same time, or at different times, and show on their face that each was executed to carry out the common intent, they should be construed together."
The plaintiff objected to the introduction of the conditional sales contract by the defendant. Manifestly, this objection cannot be sustained in view of the particular facts disclosed by the record.
Plaintiff also contended that the defendant had failed to comply with the warranty in that it had not returned the machine "free of charge to the place from whence it was received." The defendant, however, said: "The machine was delivered to me on the yard in front of my place. When I disconnected it I just pushed it out to the edge of the yard. It was delivered to me on the platform where it was run. I slid it off the platform. We notified them." Obviously, this evidence was competent to show the place of delivery.
The record discloses no error of law warranting the overthrow of judgment, and it is approved.
Affirmed. *Page 763